SCOTLAND COUNTY COURT *v.* UNITED STATES *ex rel.* HILL.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MISSOURI.

No. 298. Argued April 9, 10, 1891. — Decided April 20, 1891.

When the bonds of the plaintiff in error which form the basis of the subject of controversy were issued, there existed a power of taxation sufficient to pay them and their accruing coupons, which power entered into and formed part of the contract, and could not be taken away by subsequent legislation.

THE case is stated in the opinion.

*Mr. John C. Moore* for plaintiffs in error.

*Mr. F. T. Hughes* for defendant in error. *Mr. John H. Overall* was with him on the brief.

MR. JUSTICE HARLAN delivered the opinion of the court.

In the year 1879, William Hill, the testator of the defendants in error, obtained a judgment in the court below against the county of Scotland, Missouri, for the sum of $46,944, the amount of certain coupons of bonds bearing date September 1, 1870, and issued to the Missouri, Iowa and Nebraska Railway Company, a corporation created by the consolidation of the Alexandria and Nebraska City Railroad Company of Missouri (originally the Alexandria and Bloomfield Railroad Company) with the Iowa Southern Railway Company of Iowa. The bonds recited that they were issued under and pursuant to an order of the Scotland county court for subscription to the stock of the Missouri, Iowa and Nebraska Railway Company, "as authorized by an act of the general assembly of the State of Missouri, entitled 'An act to incorporate the Alexandria and Bloomfield Railroad Company,' approved February 9, 1857." Laws of Missouri, 1856–1857, 94.

The consolidation above referred to took place under a general statute of Missouri, approved March 2, 1869, (Laws of Missouri, 1869, p. 75,) authorizing the consolidation of railroad companies in that State with companies owning connecting railroads in adjoining States. The fourth section of that act is as follows: "Any such consolidated company shall be subject to all the liabilities, and bound by all the obligations of the company within this State, which may be thus consolidated with one in the adjacent State, as fully as if such consolidation had not taken place, and shall be subject to the same duties and obligations to the State, and be entitled to the same franchises and privileges under the laws of this State, as if the consolidation had not taken place."

The tenth section of the act incorporating the Alexandria and Bloomfield Railroad Company provided: "Said company shall, in all things, be subject to the same restrictions, and entitled to all the privileges, rights and immunities which were granted to the North Missouri Railroad Company by an act entitled 'An act to incorporate the North Missouri Railroad Company,' approved March 3, 1851, so far as the same are applicable to the company hereby created, as fully and completely as if the same were herein reënacted." Among the rights and privileges thus acquired by the Alexandria and Bloomfield Company, and which passed to the consolidated company, are those enumerated in the fourteenth section of the act incorporating the North Missouri Railroad Company, in these words: "It shall be lawful for the county court of any county in which any part of the route of said railroad may be, to subscribe to the stock of said company, and it may invest its funds in the stock of said company and issue the bonds of such county to raise funds to pay the stock thus subscribed, and to take proper steps to protect the interests and credit of the county." Laws of Missouri, 1851, pp. 483, 486.

At the first trial of the action there was a verdict and judgment against the county. That judgment was reversed, for error in excluding evidence offered in its behalf, and the case was remanded for a new trial. *Scotland County* v. *Hill,* 112 U. S. 183, 185. At the next trial there was a. judgment

against the county for the above amount, which was affirmed by this court. *Scotland County* v. *Hill*, 132 U. S. 107.

. The present action was by information for a mandamus against the county court of Scotland County and the judges thereof, requiring the levy and collection of a tax for the payment of this judgment. The alternative mandamus recited the judgment, and the failure of the county to pay it, or by its proper officers to levy and collect a tax for its payment, and commanded the county court and the judges thereof to forthwith levy and cause to be collected upon all the real estate and personal property in the county subject to taxation a tax for the payment of the judgment, with interest and costs, including the costs of this proceeding, and to pay the same according to law.

. To this mandamus the county court and its judges made a long return, the object, apparently, of the greater part of which was to reopen the questions involving the authority of the county to issue the bonds and coupons in question. But the material parts of the return are as follows: " Respondents aver that neither at the date of the execution of the coupons in relator's judgment merged, nor at any period prior to said date, nor at the present time, was there or is there now any law in force in the State of Missouri requiring or authorizing the county court of Scotland County, in the State of Missouri, to levy any special tax upon the taxable property of or in said county, in the State of Missouri, for the purpose of paying the judgment in said relator's writ described. Respondents aver that they did at the May term, 1887, of the county court of Scotland County, in the State of Missouri, make and cause to be entered upon the records of said court, (as will fully appear from a duly certified copy of said order herewith filed, marked 'Exhibit A,' and made part of this return,) an order levying upon all the property, real or personal, subject to taxation for state purposes in said Scotland County, a tax for county purposes of one-half of one per cent upon each and every one hundred dollars of the assessed value of such property." It was also averred in the return that during each year prior to 1887 similar levies had been made by the respondents or their pre-

·decessors, namely, one-half of one per cent upon each one hundred ·dollars of the assessed value of property in the county; that the judgment could only be paid out of taxes levied and assessed for county purposes; that there were no funds, at the time the return was made, with which to pay the judgment; and that respondents would violate the law of the State if they made a larger levy. A demurrer to the return was sustained, and the respondents electing to stand by their return, a judgment was entered in accordance with the prayer of the information. 32 Fed. Rep. 714.

Certain questions, arising out of the subscription by Scotland County to the capital stock of the Missouri, Iowa and Nebraska Railway Company, and the issuing by its county court of bonds in payment of such subscription, have been closed by former adjudications. It has been heretofore determined that the power of the county, derived under the act of February 9, 1857, from the charter of the North Missouri Railroad Company, to subscribe, without a previous vote of the people, to the capital stock of the Alexandria and Bloomfield Railroad Company, was a privilege of that company, which passed, by the above consolidation, to the Missouri, Iowa and Nebraska Railway Company; that the prohibition in the constitution of Missouri of 1865 against municipal subscriptions to the stock of, or of loans of credit to, companies, associations or corporations, without the previous assent of two-thirds of the qualified voters at a regular or special election, limited the future exercise of legislative power, but did not take away any authority granted before that constitution went into operation; and that the subscription made by the county court was binding, and the bonds issued in payment thereof were valid. *County of Scotland* v. *Thomas,* 94 U. S. 682, 693, 694; *County of Ralls* v. *Douglass,* 105 U. S. 728; *Ralls County Court* v. *United States,* 105 U. S. 733, 734; *Scotland County* v. ·*Hill,* 132 U. S. 107, 111, and authorities there cited.

The only question, therefore, open for discussion in the present case is whether the tax which the order below required to be levied and collected, namely, a tax *sufficient* to pay Hill's judgment, with interest and costs, was authorized by law.

The contention of respondents is that when the bonds were issued September 1, 1870, they had no power, under the laws of Missouri, to levy a tax in excess of one-half of one per cent; and, as in the year 1887, when this action was commenced, and in previous years, the levies made by them and their predecessors in office were up to that limit, they were without power to make the additional levy required by the judgment in this case. The court below held that, under the laws of the State, when the bonds were negotiated the county court had ample authority to levy such tax as was necessary to pay them. The question thus presented is within a narrow compass.

We have seen that the Alexandria and Bloomfield Railroad Company was invested with all the privileges, rights and immunities granted to the North Missouri Railroad Company, and that by the charter of the latter company the county court of any county making a subscription to its stock, was authorized to issue bonds to raise funds to pay for the stock subscribed, "and to take proper steps to protect the interest and credit of the county." This power of the county court was a right and privilege of the company in whose behalf it was to be exercised. Now, was not the power "to protect the interest and credit of the county," in respect to bonds it had legally issued for stock, a power to levy and collect a tax sufficient to pay the bonds and the interest accruing thereon? This question was answered in the affirmative in *Ralls County* v. *United States,* 105 U. S. 733, 735, 736. That was a proceeding by mandamus to compel the county court to pay a judgment rendered against Ralls County, Missouri, for the interest due on bonds issued by that county in payment of a subscription to the stock of the St. Louis and Keokuk Railroad Company, whose charter provided (as did that of the Alexandria and Bloomfield Railroad Company) that it should "be lawful for the county court of any county in which any part of the route of said railroad may be, to subscribe to the stock of said company," "and issue the bonds of such county to raise funds to pay the stock thus subscribed, and to take proper steps to protect the interest and credit of the county." Laws of Missouri, 1856–7, pp. 125; 132,

§ 29.  In that case, as in this, the county court insisted that
its power of taxation was limited to the levy of an annual tax
of one-half of one per cent on the taxable property in the
county, and, as that amount of tax had been levied at the times
provided by law, the duty of the court had been fully per-
formed.  On the other side it was contended that if the county
funds were not sufficient to pay the judgment the county court
should be required to levy and collect such tax as was neces-
sary for that purpose.  This court, speaking by Chief Justice
Waite, held that the creditor was entitled to any fund that
could be lawfully raised by the county to pay the judgment;
that the coupons carried with them into the judgment all the
remedies which in law formed a part of their contract obliga-
tions; that "when authority is granted by the legislative
branch of the government to a municipality, or a subdivision
of a State, to contract an extraordinary debt by the issue of
negotiable securities, the power to levy taxes sufficient to meet,
at maturity, the obligation to be incurred, is conclusively im-
plied, unless the law which confers the authority, or some
general law in force at the time, clearly manifests a contrary
legislative intention.  The power to tax is necessarily an in-
gredient of such a power to contract; as, ordinarily, political
bodies can only meet their pecuniary obligations through the
instrumentality of taxation " — citing *Loan Association* v.
*Topeka*, 20 Wall. 655, and *United States* v. *New Orleans*, 98
U. S. 381.  After referring to and distinguishing *United States*
v. *County of Macon*, 99 U. S. 582, in which it appeared that
the authority of the municipality to contract was burdened
with a special limitation upon its power of taxation, the court
proceeded: "In the present case there is no such special limi-
tation.  The defence rests entirely on the power to tax to
'defray the expenses of the county,' which it has always been
the policy of the State to restrict.  The county court was,
however, not only authorized to issue bonds, but to 'take
proper steps to protect the interest *and credit* of the county.'
It would seem as though nothing more was needed.  As the
commercial credit of the county, in respect to its negotiable
bonds, could only be protected, under ordinary circumstances,

by the prompt payment of both principal and interest, at maturity, and there is nothing to show that payment was to be made in any other way than through taxation, it necessarily follows that power to tax to meet the payment was one of the essential elements of the power to protect the credit. If what the law requires to be done can only be done through taxation, then taxation is authorized to the extent that may be needed, unless it is otherwise expressly declared. The power to tax in such cases is not an implied power, but a duty growing out of the power to contract. The one power is as much express as the other. Here it seems to have been understood by the legislature that the ordinary taxes might not be enough to enable the county to meet the extraordinary obligation that was to be incurred, and so, without placing any restriction on the amount to be raised, the county court was expressly authorized to do *all* that was necessary to protect the credit of the county. . . . The subscription was paid by the bonds; but the obligation to pay the bonds, principal and interest, when they matured was legally substituted."

All that was said in that case is applicable to the present case, and places beyond question the power and duty of the county court of Scotland to levy such tax as may be sufficient to pay the judgment obtained by Hill, with interest and costs.

*Judgment affirmed.*