NORRIS et al. v. MONTEZUMA VALLEY IRR. DIST. et al.*

(Circuit Court of Appeals, Eighth Circuit.   February 13, 1918.)

No. 4901.

1. WATERS AND WATER COURSES ⊜231—IRRIGATION DISTRICT—BONDS—OBLIGATION TO LEVY TAX.

Statutory power given an irrigation district to issue its bonds, when exercised, imposed an obligation on the district to levy a sufficient tax to pay such bonds as they become due, unless the Constitution or statutes of the state forbade.

2. WATERS AND WATER COURSES ⊜231—IRRIGATION DISTRICT—APPORTIONMENT OF COST OF IMPROVEMENTS.

The cost of the improvements in a local assessment irrigation district must be apportioned in some just mode according to the benefits received by the several portions of the district.

3. MUNICIPAL CORPORATIONS ⊜961—OBLIGATION TO PAY DEBT—ASSESSMENT AND RATE OF LEVY—COLLECTION OF TAXES.

A statutory obligation of a municipal or quasi municipal corporation to pay its debt, or to fix a rate of levy necessary to provide the amount of money required to pay its debt, is not satisfied by an assessment and rate of levy sufficient to pay the debt if the taxes are collected, but requires that there be a sufficient assessment and levy and collection of the taxes as levied actually to pay the debt.

4. TAXATION ⊜42(1)—UNIFORMITY—ADDITIONAL LEVY ON PROPERTY IN IMPROVEMENT DISTRICT.

Provisions in state Constitution and statutes that assessments or levies for taxation shall be uniform upon the same class of subjects, or by value, are not violated when, after lapse of a reasonable time, and after reasonable efforts have been made to collect the first levy, as for the cost of an irrigation improvement, an additional levy is made on all the property in the district, because of the failure of some of the taxpayers to pay their portions of the first levy.

5. MANDAMUS ⊜116—TO COMPEL LEVY OF ASSESSMENT—PAYMENT OF JUDGMENT ON BONDS.

Where the debt of an irrigation district to its bondholders had not been paid, when they sued for mandamus to compel a levy of assessment against lands of the district to pay a judgment on interest coupons, about 18 months after the coupons became due, and the lands delinquent under a prior assessment had been offered for sale for taxes, but had only been struck off to the county for lack of other buyers, and only a small number of such sales had been redeemed, the number of taxpayers who refused to pay increasing year by year, so that no further collection of any substantial sums from prior levies was to be expected, the bondholders were entitled to mandamus to compel levy of assessment against the lands of the district to pay the judgment on the interest coupons.

6. WATERS AND WATER COURSES ⊜230(6)—IRRIGATION DISTRICT—BONDS—INTEREST COUPONS—APPORTIONMENT OF FUND.

Under Colorado irrigation statutes, the county treasurer was not required to pay coupons from bonds of an irrigation district in the order of presentation, but the fund available, insufficient to pay all coupons, was to be allotted to all holders of coupons who presented them within a reasonable time after they were due.

Amidon, District Judge, dissenting.

In Error to the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Petition for mandamus by Mark Norris and others against the Montezuma Valley Irrigation District and others.   To review a judgment

(240 Fed. 825) granting the prayer for relief in part and denying it in part, plaintiffs bring error. Reversed, and cause remanded for further proceedings in accordance with the opinion.

Fred R. Wright, of Denver, Colo. (Charles D. Hayt and Clyde C. Dawson, both of Denver, Colo., and Mark Norris, of Grand Rapids, Mich., on the brief), for plaintiffs in error.

B. W. Ritter, of Durango, Colo. (Edgar Buchanan, of Durango, Colo., and W. F. Mowry, of Cortez, Colo., on the brief), for defendants in error.

Pershing, Titsworth & Fry, of Denver, Colo., amici curiæ.

Before CARLAND, Circuit Judge, and AMIDON and MUNGER, District Judges.

MUNGER, District Judge. The plaintiffs below sought a writ of mandamus to compel the county treasurer to apply a certain fund in his hands on the payment of a judgment held by them and to compel a levy of a tax to pay the unpaid balance of the judgment. The trial court granted a writ requiring the county treasurer to pay over a portion of the fund in his hands to apply on the judgment and denied the prayer for other relief, and the plaintiffs have prosecuted this writ of error.

The Montezuma Valley irrigation district was organized under the statutes of Colorado, and in 1907 and 1910 it issued two series of its coupon bonds to the amount of $805,000 to raise the funds for the construction of an irrigation system. For some years it paid these interest coupons as they fell due from a fund derived from taxes levied against each acre in the district which was benefited by reason of irrigation. Some of the owners of the lands did not pay the taxes levied against their lands, and nearly $50,000 of such taxes were in arrears in 1914. To meet the interest coupons falling due on December 1, 1914, the board of county commissioners made a levy in December, 1913, of an amount against the lands of the district which would have been sufficient to have paid the coupons, if all the taxes had been collected; but a large number of the taxpayers again defaulted in payment. The Colorado statutes required that the lands on which the taxes were delinquent should be offered for sale for the taxes, but, in case no purchaser was willing to pay the amount of the taxes due upon the lands, the certificates were to be struck off to the county. The county was not obliged to pay any money for the certificates thus acquired, nor did it thereby obtain title to the lands; but it held the tax sale certificates for subsequent redemption or purchase by those who should be interested. A purchaser of the certificates was required to pay all of the taxes levied against the land, and if he thereafter paid all taxes subsequently levied thereon he might obtain a tax deed after the lapse of three years; but this deed might be set aside within five years if the proceedings had not been regularly conducted. A later statute, in force since 1915 (Laws 1915, p. 315), provides that the lands are to be sold to the irrigation district, if no one offers to purchase them, and the district, or its assignee, is entitled to a tax deed in the same manner as a private purchaser at the tax sale

would have been entitled, upon payment to the county treasurer of such a sum as the county board of commissioners might determine.

The plaintiffs were the owners of some of the bonds of both series issued by the district, and soon after they were due presented for payment some of the coupons that were due on December 1, 1914, but payment was refused. They then brought suit upon the coupons, and obtained judgment in January, 1916. In May, 1916, they brought this action in mandamus, seeking to compel the board of county commissioners to levy an additional tax against the lands of the district sufficient to pay the judgment. The defendants' answer alleged that a levy of a sufficient tax had been made to pay the district's debts, and that a further levy could not be required, even if portions of the former levy were unpaid, because such a levy would impose an unequal burden on the lands, and in effect require the whole debt to be discharged by that portion of the taxpayers who had paid their shares of the prior levy. This contention was upheld by the trial court.

The statutes of Colorado (sections 3440–3494, chapter 72, Rev. Stat. 1908) provide for the organization and operation of irrigation districts, and these districts have power to own property, to sue and be sued, to acquire and conduct an irrigation system and to issue and sell its bonds for that purpose. Among the provisions of these statutes are the following:

"3456. *Bonds - Payment—Lien.*—Said bonds, and the interest thereon. shall be paid by revenue derived from an annual assessment upon the real property of the district, and the real property of the district shall be and remain liable to be assessed for such payments as herein provided.

"3457. *Board of Directors—Levy.*—It shall be the duty of the board of directors. on or before September first of each year, to determine the amount of money required to meet the maintenance, operating and current expenses for the ensuing year, and to certify to the county commissioners of the county in which the office of said district is located, said amount, together with such additional amount as may be necessary to meet any deficiency in the payment of said expenses theretofore incurred.

"3458. *Assessor—Assessment.*—It shall be the duty of the county assessor of any county embracing the whole or a part of any irrigation district, to assess and enter upon his records as assessor in its appropriate column, the assessment of all real estate, exclusive of improvements, situate, lying and being within any irrigation district in whole or in part of such county. Immediately after said assessment shall have been extended as provided by law, the assessor shall make returns of the total amount of such assessment to the county commissioners of the county in which the office of said district is located. All lands within the district for the purpose of taxation under this act shall be valued by the assessor at the same rate per acre: Provided, that in no case shall any land be taxed for irrigation purposes under this act, which from any natural cause cannot be irrigated, or is incapable of cultivation.

"3459. *County Commissioners.*—It shall be the duty of the county commissioners of the county in which is located the office of any irrigation district, immediately upon receipt of the returns of the total assessment of said district, and upon the receipt of the certificate of the board of directors certifying the total amount of money required to be raised as herein provided, to fix the rate of levy necessary to provide said amount of money, and to fix the rate necessary to provide the amount of money required to pay the interest and principal of the bonds of said district as the same shall become due; also, to fix the rate necessary to provide the amount of money required for any other purposes as in this act provided, and which are to be raised by the levy of assessments upon the real property of said district; and to certify said respective rates to the county commissioners of each county embracing any por-

tion of said district. The rate of levy necessary to raise the required amount of money on the assessed valuation of the property of said district shall be increased fifteen per cent. to cover delinquencies. For the purposes of said district it shall be the duty of the county commissioners of each county in which any irrigation district is located in whole or in part, at the time of making levy for county purposes, to make a levy, at the rates above specified, upon all real estate in said district within their respective counties. All taxes levied under this act are special taxes.

"3460. * * * The bond fund account shall consist of all moneys received on account of interest and principal of bonds issued by said district, said accounts for interest and principal shall be kept separate. The general fund shall consist of all other moneys or general fund warrants received by the collection of taxes or otherwise. The district treasurer aforesaid shall pay out of said bond fund, when due, the interest and principal of the bonds of said district, at the time and place specified in said bonds, and shall pay out of said general fund only upon the order of the district, signed by the president and countersigned by the secretary of said district as herein provided. * * *

"3461. Assessment—Collection.—The revenue laws of this state for the assessment, levying and collection of taxes on real estate for county purposes, except as herein modified, shall be applicable for the purposes of this act, including the enforcement of penalties and forfeiture for delinquent taxes."

[1] The power given to the irrigation district to issue its bonds, when exercised, imposed an obligation upon the district to levy a sufficient tax to pay such bonds as they became due, unless the constitution or statutes of the state forbade. City of Galena v. Amy, 5 Wall. 705, 18 L. Ed. 560; Loan Association v. Topeka, 20 Wall. 655, 22 L. Ed. 455; United States v. County of Clark, 96 U. S. 211, 24 L. Ed. 628; United States v. New Orleans, 98 U. S. 381, 25 L. Ed. 225; United States v. County of Macon, 99 U. S. 582, 25 L. Ed. 331; Ralls County Court v. United States, 105 U. S. 733, 26 L. Ed. 1220; Scotland County Court v. Hill, 140 U. S. 41, 11 Sup. Ct. 697, 35 L. Ed. 351; Loeb v. Columbia Township Trustees, 179 U. S. 472, 21 Sup. Ct. 174, 45 L. Ed. 280; United States v. Saunders, 124 Fed. 124, 59 C. C. A. 394. See, also, Bates County, Mo., v. Wills, 239 Fed. 785, 152 C. C. A. 571, same case on rehearing, 245 Fed. 556, —— C. C. A. ——; Coy v. City Council, 17 Iowa, 1, 85 Am. Dec. 539.

[2] The trial court was of the opinion that the Colorado statutes relating to irrigation districts impliedly prevented an additional levy as demanded by plaintiffs because the statute provided for taxation by special assessments to pay these bonds, that each acre was subject to only the same burden as every other acre for this purpose, and that a requirement of a new levy as prayed would impose an unequal burden on the lands on which the prior levy had been paid, as compared to those lands on which the levies remained unpaid. Undoubtedly the cost of the improvements in a local assessment district must be apportioned in some just mode according to the benefits received by the several portions of the district. Gast Realty Co. v. Schneider Granite Co., 240 U. S. 55, 36 Sup. Ct. 254, 60 L. Ed. 523; Hagar v. Reclamation District No. 108, 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569; Ill. Cent. R. R. Co. v. Decatur, 147 U. S. 190, 13 Sup. Ct. 293, 37 L. Ed. 132.

[3] The scheme disclosed by these statutes relating to irrigation districts looks to uniformity of assessment per acre for the payment of the district's indebtedness, but they also provide that the "bonds,

and the interest thereon, shall be paid by revenue derived from an annual assessment upon the real property of the district, and the real property of the district shall be and remain liable to be assessed for such payments as herein provided"; also, the county board are "to fix the rate necessary to provide the amount of money required to pay the interest and principal of the bonds of said district as the same shall become due." Sections 3456, 3459. In order to give to these statutes the construction contended for by defendants in error, it is necessary to read into them a provision that there shall be paid on the bonds only so much as the annual levy shall produce in money collected, whereas the statute is peremptory that the bonds and interest shall be paid, and the remaining provisions only indicate the source and mode of obtaining the fund. In order to give full force and effect to every portion of the statute there must not only be an assessment and levy, but the debt must be paid. A statutory obligation of a municipal corporation or quasi municipal corporation to pay its debt, or to fix a rate of levy necessary to provide the amount of money required to pay its debt is not satisfied by an assessment and rate of levy sufficient to pay the debt if the taxes are collected, but requires that there be a sufficient assessment and levy and collection of the taxes as levied to actually pay the debt. East St. Louis v. Amy, 120 U. S. 600, 7 Sup. Ct. 739, 30 L. Ed. 798; Rialto Irr. Dist. v. Stowell, 246 Fed. 294; Boynton v. The District Township of Newton, 34 Iowa, 510.

There is neither express nor implied prohibition of the making of a levy large enough to accomplish this purpose. The provision granting power to the county board to estimate and fix the amount of the levy in no way undertakes to limit the amount of the levy they may make. Bates County v. Wills, supra; City of Galena v. Amy, supra.

[4] The defendants in error press the claim that a reassessment violates the statutory scheme of uniformity of taxation on each acre of these lands. The objection is not made by any taxpayer claiming to have paid his full share of the prior levy, but is made by the defendants in error, the irrigation district, the board of county commissioners and the county treasurer. Considering the defense as one that may be made by the defendants in the action below, it will be observed that the statutes do not provide that a uniform amount shall be collected per acre, but that the lands shall be valued by the assessor at the same rate per acre. The Legislature is presumed to have knowledge of the fact, that under any system of taxation by assessment hitherto devised, a portion of the taxpayers neglect to pay the taxes levied against their property for a long period after they become due. In partial recognition of this fact these statutes provide that the county board shall increase the rate of levy on an irrigation district fifteen per cent. to cover delinquencies. If the objection that is made to a reassessment be carried to its logical conclusion, the regular annual assessment would be excessive in part, because of the practical certainty that some taxpayers would not pay their taxes before the obligations of the district became due. Such a stout requirement of equality of collection would make a system of taxation that would be unworkable in practice. The ordinary ma-

chinery for the collection of taxes is not so perfect that it induces payment at the same time from all alike and usually large portions of taxes upon real property, and larger portions of poll and personal property taxes are never collected. It is supposed that the interest and penalties exacted from those who delay prompt payment and the summary means of enforcement of collection will somewhat equalize the burden that falls on those who pay promptly, but any final unpaid balance is a loss that falls uniformly upon the entire body of taxpayers. It is a common provision in the state constitutions and statutes that assessments or levies for taxation shall be uniform upon the same class of subjects, or by value. Such provisions are not violated, when, after the lapse of a reasonable time, and after reasonable efforts have been made to collect the first levy, an additional levy is made upon all the property in the district because of the failure of some of the taxpayers to pay their portions of the first levy. State v. Common Council, 15 Wis. 30; Sheridan v. Fleming, 93 Mo. 321, 5 S. W. 813; State v. Holt County Court, 135 Mo. 533, 37 S. W. 521; Wayne County Sav. Bank v. Supervisor of Township of Roscommon, 97 Mich. 630, 56 N. W. 944; Huey v. Police Jury, 33 La. Ann. 1091. See Bates County v. Wills, supra; Francis v. A. T. & S. F. Railroad Co., 19 Kan. 303. In the case of State v. Common Council it was said:

"Nor is it of any importance, in a legal point of view, that many of the citizens have contributed their full proportions of the money which should have been applied in payment of these debts, whilst others have refused, it matters not whether rightfully or wrongfully. It seems oppressive, and is, in some respects, no doubt, a great hardship, that those who are diligent and prompt in the discharge of their obligations to the public should be compelled to suffer on account of the delinquencies of others, occasioned sometimes by the mistakes of the officers of the law, or, it may be, of the Legislature, but more frequently the fault of the delinquents themselves. It is an evil inseparable from every system of taxation, a subject always difficult and never free from vices and imperfections—a misfortune which must ever attend those who dwell in communities where any are unwilling to bear their just share of the public burdens. In such affairs, the taxpayers are, as it were, sureties for one another. What one gains by accident or fraud, the other must lose. No deductions are ever made from the public revenues for such causes. The deficiencies of one year must be made up the next, and diverted funds restored. If these inequalities, often inevitable, were to constitute an excuse for the nonpayment of taxes, public faith would be at an end, and government must cease. Who doubts, for instance, that under our present law, rigid and impartial as the Legislature have endeavored to make it, great injustice is frequently done? That some are charged beyond their due proportion, whilst very many fall far short of it? So long as men suppress truth, and make false and corrupt statements of the amount and value of their property, and so long as mistakes occur, so long these things will continue. But the remedy does not consist in a refusal to pay all taxes. The evils, so far as possible, are to be obviated by the rigid enforcement of the law, the punishment of those who transgress its provisions, and the election of faithful and competent officers. Clearly such grievances, however perplexing and burdensome, are nothing to the public creditor, who has the right to look to the whole people for the payment of his demand. The duty of the common council is continuing, and does not cease with the levying of one tax which is in part unsuccessful. It ends only when the whole money is collected and the debt actually paid. They cannot, therefore, say that their powers are exhausted and no new tax can be levied."

[5] In the case now under consideration, it appears that the plaintiffs' debt had not been paid at the time of bringing this suit, about 18 months after the coupons became due, and that the lands had been offered for sale for taxes, but had been struck off to the county for lack of other bidders. Only a small amount of these sales had been redeemed, the number of taxpayers who refused to pay taxes assessed against these lands increased year by year and no further collection of any substantial sums from the prior levies was to be expected. Under these circumstances the plaintiffs were entitled to a writ of mandamus to compel a levy of assessments against the lands of the district for the purpose of the payment of this judgment.

[6] 2. When this suit was brought there was a small amount of money in the bond fund derived from prior levies. The plaintiffs had presented their coupons to the treasurer with a demand for payment. but other holders of coupons from these bonds had presented their coupons with demand of payment at about the same time. The plaintiffs prayed that the writ should command the treasurer to apply all of the money in this fund to the payment of plaintiffs' coupons, but the trial court directed that the treasurer should pay to plaintiffs only such proportion of the fund on hand as the amount of plaintiffs' coupons bore to the total amount of unpaid coupons due at the same date. This order is in accordance with the rule laid down by the Supreme Court of Colorado in the case of Thomas v. Patterson, 61 Colo. 547, 159 Pac. 34, in which it was held that under these irrigation statutes the treasurer was not required to pay the coupons in the order of presentation, but that the fund was to be allotted to all holders of coupons who should present them within a reasonable time after they were due. The rule seems reasonable and just, and no error was committed by the court in making the order accordingly. There are some other questions discussed in the briefs but they are not deemed essential to the disposition of the case.

The judgment of the trial court will be reversed, and the cause remanded for further proceedings in accordance with the views expressed herein.

AMIDON, District Judge (dissenting). I am unable to concur in the foregoing opinion, and will briefly state my reasons.

1. The defendant was organized for the purpose of carrying out a special improvement. The cost of that improvement was to be paid by a special assessment upon the property benefited. The power to levy annual taxes is confined to the upkeep of the project after the irrigation ditches are constructed. The defendant is not authorized to levy general taxes for any other purpose. It may not levy such taxes under the law of its creation to pay the cost of constructing the irrigation system. The scheme of the statute does not contemplate that one piece of land shall be responsible for the default of another in the payment of special assessments which the law authorizes. Land may be included in a project by majority vote against the will of its owner. It is manifest that if each parcel of land is liable for the entire cost of the project its assessment may greatly exceed any benefit conferred. The assessment provided by the law is not based upon the

value of the property, but is apportioned ratably as special assessments usually are. A special assessment which substantially exceeds the benefits amounts to a taking of property without due process of law. Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443. It is manifest that under the majority opinion a faithful remnant of the property embraced in the project may be charged with substantially the entire cost of the irrigation project. That, in my judgment, is a clear departure from the scheme of the statute, and even if such were the scheme when properly construed, the result would be a violation both of the state and the federal Constitution. It is not claimed that defendants have failed to levy the assessment or to take any step required by law for its collection. The only claim is that owing to delays in the procedure for the collection of the assessment, it has not yet resulted in a sufficient fund to pay the bonds. It results that defendants have not failed to perform any duty which may properly be enforced by mandamus, and that what they are commanded to do is something which they have no legal right to do.

2. The bonds are what is known in the commercial world as improvement bonds. They bear an exceptionally high rate of interest. They are, like ordinary municipal warrants, issued solely for the purpose of anticipating the collection of the special assessment. Under the statute they are payable out of a fund to arise from the collection of the special assessment, and do not create a general liability upon the lands embraced in the project to be paid by ordinary tax levies. Such improvement bonds have been issued by municipalities in the coast and mountain states for hundreds of millions of dollars. Their character is well understood in the commercial world. It is well known that such bonds are payable solely out of a fund arising from the special assessment. They bear a high rate of interest, and are frequently sold at a discount because they are not what is known in the business world as municipal bonds. Parties purchasing such securities investigate the project lying behind them as carefully as a good loan agent investigates properties upon which he is taking a mortgage. The price paid, as well as the rate of interest, expresses the hazard which the purchaser of these improvement bonds takes. To treat them as municipal obligations, as the majority opinion does, is, in my judgment, a complete departure from the view of the business world which deals in such securities.

For these reasons I think the judgment should be affirmed.