# FIRST NATIONAL BANK OF GLENDIVE, APPELLANT, v. SORENSON, COUNTY TREASURER, ET AL., RESPONDENTS.

(No. 4,887.)

(Submitted September 27, 1922. Decided November 4, 1922.)

[210 Pac. 900.]

*Taxation—Cities and Towns—Special Taxes—Bond Issues—Interest and Sinking Fund—Irregularity in Procedure—Burden of Proof—Appeal—Presumptions.*

Cities and Towns—Extent of Power to Tax.
  1. A city has no inherent power to levy taxes on property within its corporate limits, its power in that respect being limited to that conferred by statute, which must be strictly construed.
Same—Taxation—Statutes—"Levy"—"Assess"—Words Used Interchangeably.
  2. The words "levy" and "assess" as used in sections of the Codes authorizing cities to levy and assess taxes are used interchangeably

---

Delegation of power to municipal corporation or school district to levy tax, see notes in 74 **Am. Dec.** 590; 8 **Ann. Cas.** 535; 15 **L. R. A.** (n. s.) 62.

and not in a narrow or technical sense, both referring to the act of determining the amount and levying the rate of taxation—the doing of all those acts required for the imposition of a tax to be paid by the property owners.

Same—Special Taxes—Interest and Sinking Fund—Power to Levy.

3.   *Held,* under section 3343, Revised Codes of 1907 (sec. 5200, Rev. Codes 1921), that a city had the power to levy special taxes for the purpose of paying interest on bonded indebtedness and creating a sinking fund, and that the contention that the taxing power of a city of a class other than the first class was limited to a ten mill levy for all purposes by section 3342 as amended by the Laws of 1917 (sec. 5194, Rev. Codes 1921), has no merit.

Same—Bonded Indebtedness—Implied Power to Levy Special Tax.

4.   While under section 3459, Revised Codes of 1907, it is made the duty of the city- council to levy a tax each year for paying interest on its bonded indebtedness and creating a sinking fund, its power in that respect, in the absence of statutory provision, would be implied from the power given to create the indebtedness.

Same—Bonds—Contract of Purchase—What Included.

5.   The provision of an ordinance providing for a bond issue authorizing an annual tax levy for interest and sinking fund purposes, together with the provisions of the statute for the issuing and sale of bonds, became a part of the .city's contract with the purchasers thereof.

Same—Special Tax—Irregularity—When Immaterial.

6.   A mere irregularity in proceedings of a city council in levying a special tax does not injure a taxpayer, and therefore nothing short of proof that the tax levy complained of was illegal and invalid will support a recovery.

Same.

7.   Under the above rule (par. 6), *held* that the irregularity of the city council in making a levy of a special tax by resolution instead of by ordinance as required by section 3459, Revised Codes of 1907, did not render the tax invalid.

Same—Special Tax for Interest on Funded Debt—When Illegal.

8.   A tax levy for interest on funded indebtedness is illegal where there is no funded debt to which the interest could be applied.

Evidence—Presumption Based on Presumption.

9.   A presumption, being a deduction which the law expressly directs to be made from particular facts, cannot be based upon a further presumption.

Taxes Paid Under Protest—Recovery—Burden of Proof.

10.   In an action to recover taxes under protest, the burden of proof is always upon plaintiff to establish the invalidity of the tax.

Same—Appeal—Presumption of Legality of Tax, When Indulged.

11.   Where the pleadings and the agreed statement of facts upon which an action to recover taxes paid under protest and levied to create a sinking fund for the redemption of filtration water bonds was tried did not show that the revenues from the plant were sufficient to create a fund for that purpose, the presumption will be indulged on appeal that the city authorities complied with the law and that the levy was made because of the insufficiency of the revenues of the plant to meet that demand.

[65 Mont. 1.]

*Appeal from District Court, Dawson County in the Seventh Judicial District; Stanley E. Felt, a Judge of the Sixteenth District, Presiding.*

ACTION to recover taxes by the First National Bank of Glendive against J. C. Sorenson and others. From a judgment for plaintiff in an amount less than prayed for, plaintiff appeals. Remanded, with directions to modify the judgment, and, when so modified, the judgment to stand affirmed.

*Messrs. Hurley & O'Neill,* for Appellant, submitted a brief; *Mr. Hurley* argued the cause orally.

Citing on the question of the taxing power of a municipal corporation: 28 Cyc. 1658, 1661; *State ex rel. City of Cincinnati* v. *Humphreys,* 25 Ohio St. 520; *Corbett* v. *City of Portland,* 31 Or. 407, 48 Pac. 428. Taxing power in reference to municipal water plant bonds: 28 Cyc. 383; *Edwards* v. *City of Helena,* 58 Mont. 292, 191 Pac. 387.

*Mr. N. M. Coursolle,* for Respondents, submitted a brief; *Mr. Albert Anderson,* of Counsel, argued the cause orally.

Taxing power in reference to municipal water plant bonds: The pleadings do not disclose that there were or were not revenues derived from the waterworks system during the period covered by the tax in question which might have been devoted to the payment of the indebtedness incurred. The complaint is silent upon the subject.

The burden of proof was upon the plaintiff. "The burden of proving, in an action to recover back taxes, the illegality of the taxes or an ordinance, is on the plaintiff. (*Ligonier* v. *Ackerman,* 46 Ind. 552, 15 Am. Rep. 323; *Douglasville* v. *Johns,* 62 Ga. 423; *Sullivan* v. *McCammon,* 51 Ind. 264.)" (4 Dillon on Municipal Corporations, sec. 2823, note.)

This is "an equitable action, and no recovery can be had except upon proof that the defendant has received money of

the plaintiff which, in equity and good conscience, it ought not to retain.'' (*Carton* v. *Board of County Commrs.,* 10 Wyo. 416, 69 Pac. 1013.) The supreme court of Michigan has held: "The right to recover must be based upon the claim that the city has money in its custody which, in equity and good conscience, it ought to repay to the plaintiff.'' (*Minor Lumber Co.* v. *City of Alpena,* 97 Mich. 499, 56 N. W. 926.) The supreme court of Wisconsin has held that one cannot recover a tax with which his property is justly chargeable, where he neither alleges nor proves any defect going to the validity of the assessment and affecting the groundwork of the tax. (*Wiesmann* v. *Brighton,* 83 Wis. 550, 53 N. W. 911.)

MR. JUSTICE FARR delivered the opinion of the court.

The plaintiff, a national banking corporation, brought this action against the city treasurer of the city of Glendive and the county treasurer of Dawson county, for the purpose of recovering all the city taxes paid by it to the county treasurer for the city of Glendive, under protest, in the year 1917, in excess of ten mills on the dollar, on an assessed valuation of $68,726. The levy made by the city for that year for general municipal and administrative purposes was eleven mills, and for other purposes six mills, a total of seventeen mills. The district court held that the levy of eleven mills for general municipal and administrative purposes was in excess of the city's jurisdiction to the extent of one mill, and judgment was given the plaintiff for such excess—that is, one mill on the plaintiff's total assessed valuation; and it further held that the levies made for other purposes to the total amount of six mills were within the power of the city, and as to these levies found against the plaintiff. No judgment was taken against the county and as to it the case was dismissed. Plaintiff has appealed to this court from the judgment.

The case was presented to and heard by the district court upon the pleadings and an agreed statement of facts; Judge Stanley E. Felt, of the sixteenth judicial district, presiding by

reason of the disqualification of District Judge Frank P.
Leiper. No claim is made that the district court did not cor-
rectly give judgment against the city based on the one mill
levied for general municipal and administrative purposes in
excess of the ten mills authorized by section 3342 of the Re-
vised Codes of 1907, as amended by the Act of the fifteenth
legislative assembly. (Chapter 27 of the Session Laws of 1917,
page 29.) It is conceded that by this section the amount of
taxes to be assessed and levied for general municipal and ad-
ministrative purposes in a city with a population less than
35,000 must not exceed one per centum on the assessed value of
the taxable property of the city, and that Glendive comes
within this limit.

On the sixth day of August, 1917, the city council of the
city of Glendive passed what was termed or named by it a
"resolution" entitled "Resolution determining the tax levy
of the city of Glendive, Montana, for the year 1917," which
provided that:

"There be levied a tax of 11 mills on all of the taxable
property within the limits of the city of Glendive, Mon-
tana for general municipal purposes; * * * and * * *
that there be levied a tax of six mills * * * on all of the
taxable property within the limits of the city * * * for
the following purposes:

To create a sinking fund for filtration water bonds ... .001
To create a sinking fund for city hall bonds .......... .00½
To create a sinking fund for sewer bonds ............ .00½
To pay interest on the funded debt ................. .004."

Plaintiff's argument presents four contentions: (1) That
the city council did not have the power or authority to levy
any taxes in excess of the ten-mill levy authorized by section
3342 of the 1907 Codes, as amended by the Act of 1917 (now
section 5194, Rev. Codes 1921), for general municipal and ad-
ministrative purposes, the effect of which contention is to urge
that there is not any authority given to a city council to levy
any special tax for bond interest or sinking fund purposes;

(2) that the city council of the city of Glendive did not follow the provisions of section 3459 of the 1907 Codes, and by ordinance fix a tax to be levied for sinking fund purposes for the year 1917; (3) that the levy of four mills "to pay interest on funded debt" is void; and (4) that the levy of one mill to create a sinking fund for filtration water bonds is void.

1. Plaintiff's first contention, that a municipal corporation [1-3] may not for any purpose levy a tax to exceed ten mills, is a novel one, and if it could be sustained would revolutionize the whole system and theory of municipal taxation for bond interest or sinking fund purposes. The contention is without any merit. It is elementary that a city has no inherent power to levy a tax on the property situated within its corporate limits, but only such power as is conferred upon it by statute, and that statutes conferring such authority are to be strictly construed. (Dillon on Municipal Corporations, sec. 1377; 28 Cyc. 1658, 1661.) The city asserts its power to levy the additional six mills by virtue of section 3343 of the 1907 Codes, which provides that: "The council may also assess and levy the special taxes or assessments provided for in this title."

By section 3346 of the 1907 Codes it is stated that: "The council has power to levy, collect and equalize annually taxes on all the property in the city or town taxable for state and county purposes, and may by ordinance provide for the levy, assessment * * * and collection of the same"—the amount of which being limited by sections 3342 and 3343. As to the levy and assessment of such taxes it is provided by the statute as it then existed (sec. 3358) that: "The council must, on or before the first Monday of October of each year, by resolution, determine the amount of city or town taxes for all purposes, to be levied and assessed on the taxable property in the city or town for the current fiscal year. * * * " The words "levied" and "assessed" are here used in the statute interchangeably, and not in any narrow technical sense; both refer

to the act of determining the amount and levying the rate of taxation—the doing of all of those acts required for the imposition of a tax to be paid by the property owners. (*State* v. *Fleming,* 70 Neb. 529, 97 N. W. 1063; *State* v. *Eldredge,* 27 Utah, 477, 76 Pac. 337; *South Covington & C. St. Ry. Co.* v. *Town of Bellevue,* 105 Ky. 283, 57 L. R. A. 50, 49 S. W. 23.)

Appellant concedes that the grant of power to a city to levy taxes for general municipal and administrative purposes is conferred by section 3342, but why it is not likewise conferred to the full extent expressed therein or necessarily implied therefrom, by section 3343, is not argued by plaintiff. Section 3342 and section 3343 are each a part of the same Chapter, namely, Chapter 3 of Title III, Part IV of the Political Code of 1907, Chapter 3 being entitled ''Organization and Government of Cities and Towns,'' and Title III, ''Cities and Towns,'' and each is equally a grant of power to the city: (1) The former for the purpose of levying taxes for general municipal and administrative purposes to the limit of one per centum of the assessed value of the taxable property of a city of the population of Glendive; and (2) the latter for the purpose of assessing and levying the special taxes and assessment provided for in that title.

The special taxes provided for in Title III, so far as this case is concerned, relate to taxes for the benefit of municipal bonds theretofore issued and sold by the city. No question of any special assessment is involved in this case. The city asserts that all of these levies were required and authorized for the purpose of creating a sinking fund for the ultimate payment of certain bonds previously issued and sold by the city, pursuant to ordinances of the city and the vote of the taxpayers at various city elections authorizing the issuance and sale of said bonds. In 1905 there were issued and sold $45,000 ''water supply bonds'' and $5,000 ''sewerage bonds,'' the issuance and sale of which were both provided for by the same ordinance. In 1908 the city issued and sold $15,000 ''addi-

tional water supply bonds," and in 1914 $27,000 "city hall bonds," and in 1916 $65,000 "water supply and filtration bonds." No question is raised as to the legality of any of these bond issues. The city council is, by subdivision 64 of section 3259 of the 1907 Codes (a part of Title III of the Political Code of 1907), given power to "contract an· indebtedness in behalf of a city or town, upon the credit thereof, by borrowing money or issuing bonds" for the purposes therein enumerated and within the limits therein provided. By section 3454 of the 1907 Codes, it being the first section of Chapter 5 of Part IV of the Political Code of 1907, entitled "Indebtedness of Cities and Towns—Bonds," it is provided that, whenever a city council of any city deems it necessary to borrow money or contract indebtedness under its powers as set forth in subdivision 64 of section 3259 of the 1907 Codes, it shall first submit the question of issuing bonds or contracting such indebtedness to the qualified electors of the city, and in the following sections of this same Chapter the manner of the submission of such question to the electors is provided. Section 3459, being a part of the same Chapter, then provides that: "A tax to be fixed by ordinance must be levied each year for the purpose of paying interest on the bonds and to create a sinking fund for their redemption. * * * " This duty is. not optional. The language of the. statute is plain, direct and mandatory. (*State ex rel.* ` `*Great Falls Waterworks* v. *Mayor and City of Great Falls,* 19 Mont. 518, 49 Pac. 15.) But, even though the grant of power by the [4]    statute was not in express terms, such power would be implied from the power given to the council to create, for the power given to a city council to create an indebtedness by the issuance and sale of bonds, necessarily implies the power to raise the means with which to pay the interest and to create a sinking fund for the payment of the principal when due. (Abbott on Municipal Corporations, secs. 224, 305; 4 Dillon on Municipal Corporations, sec. 1377; McQuillin ` on Municipal Corporations, sec. 2633; *Wilson* v. *Florence,* 40 S. C. 426, 19

S. E. 4; *State* v. *Bristol,* 109 Tenn. 315, 70 S. W. 1031; *Scotland County Court* v. *United States,* 140 U. S. 41, 35 L. Ed. 351, 11 Sup. Ct. Rep. 697 [see, also, Rose's U. S. Notes].)

In the case of *Bain* v. *City of Goldsboro,* 164 N. C. 102, 80 S. E. 256, the question was very much the same as is here presented, and the court there said: "The clause of the Revenue Act * * * limiting the rate of municipal taxation to one per centum on the value of real and personal property does not apply to our facts, as the legislature has given special authority to levy the tax for the payment of the principal and interest of the bonds to be issued by the defendant, which brings this case within the exception of that section."

2. Plaintiff makes the further contention that, even though [5–7] the city council does possess the power to assess and levy taxes for the purpose of creating a sinking fund for the payment of the principal of the several bond issues when due, such levy must be made by ordinance, and that, instead of an ordinance, the city council passed a resolution purporting to make the levy. In each of the bond issues, except, so far as the record shows, the city hall bond issue, the ordinance providing for the issue recited that: "There is hereby authorized and directed to be levied and collected while the said bonds or any portion thereof are outstanding and unpaid, an annual tax which shall be sufficient, with any other revenues available therefor, to meet the payment of the interest on the said bonds as the same become due, and to provide a sinking fund for the payment of the principal thereof at or before their maturity; and it is hereby made the duty of the proper officers to see to the levy and collection of such taxes sufficient in amount for the said purposes, and to the application of the proceeds therefrom to the payment of the interest and principal of the said bonds as and when the same become due and payable." This provision of the ordinance, together with all of the provisions of the statute, upon the issuance and sale of the bonds, became a part of the city's contract with the purchasers. (Abbott on Municipal Corporations, sec. 223; 4 Dillon on Mu-

nicipal Corporations, sec. 1512; *Seibert* v. *Lewis,* 122 U. S. 284, 30 L. Ed. 1161, 7 Sup. Ct. Rep. 1190 [see, also, Rose's U. S. Notes].) Section 3459 of the 1907 Codes expressed in positive and unequivocal language the duty imposed upon the city council in this respect, even in the absence of such mandatory provision. (*State ex rel. Great Falls Water Works* v. *Mayor and City Council of Great Falls, supra.*) Given the power to create a bonded indebtedness, as already indicated, implies the power to provide for its payment. It was, no doubt, the intent and purpose of the legislature in enacting this provision, that for the better protection and understanding of the bondholders, and in order to make municipal bonds more salable, the statute should in express terms provide for that which was already implied. It provided that a tax, to be fixed by ordinance, should be levied. Whether it was intended by this section that the tax should be fixed by ordinance before the levy was made is immaterial. To do this would require, in order to strictly comply with the statute, that a new ordinance be enacted each year, for there could not be an ordinance enacted which would provide for the amount of the levy to be made each year. The levy—that is, the number of mills —would vary from year to year, depending upon the amount of other revenues available, more especially in the case of water bonds, or in fact any bonds issued in behalf of a municipality owned enterprise producing revenue which must first be applied to such bonds; also depending upon the amount of property subject to taxation in any given year, and upon the total amount of bonds outstanding, particularly in the case of an issue maturing serially.

A duty was imposed upon the city council to make certain levies of taxes for certain purposes, which duty could be enforced, if need be, by the holder of any of the city's bonds. The city council made the levies required; it performed the duty that the law imposed upon it. It is true that it did not perform that duty in the exact method provided by the law, but it did make the levies and whether it termed its act

in so doing "ordinance" or "resolution" is immaterial. That the duty was not performed in the exact method prescribed by the statute cannot be taken advantage of by a taxpayer, without a showing that the tax was one which the city council did not have the power and authority to levy. That the council acted irregularly gave the plaintiff no cause of action, without a showing that it had in some way been injured.

Irregularities on the part of the city council in levying taxes do not injure a taxpayer if the tax levy was in fact a legal tax to be levied. Nothing short of proof that the tax was illegal and invalid will support a recovery. The principle is well stated in Cooley on Taxation, third edition, at page 1493, as follows: "When a municipal corporation is sued for money collected and paid over to it as a tax, the idea on which the suit is predicated is, that the corporation has received that which, in justice, it ought not to retain. A suit will not, therefore, lie to recover back taxes paid when the only complaint that can be made of them is that the proceedings in their levy and collection have been irregular. The fact of their irregularity does not establish injustice; there must be something further in the case which either exempts the party from the tax altogether, or which, because of illegality or inequality, deprived the officers of jurisdiction. Municipalities do not guarantee to their people correct action on the part of their officers, and if they did, no one would be entitled to rely upon the guaranty until he was injured. Irregular action does not necessarily injure the parties concerned.  *  *  *  "

The court in the case of *Town of White Sulphur Springs* v. *Pierce,* 21 Mont. 130, 53 Pac. 103, had under consideration the construction of like provisions of the 1895 Codes, and it was held that although the board of aldermen of White Sulphur had not provided by ordinance for the collection of its taxes, nevertheless the taxes there in controversy, levied by the resolution of the board were legal.

3. Plaintiff contends that, even though it be held that the [8] city was authorized to assess and levy taxes for bond

interest and sinking fund purposes, the four-mill levy "for interest on the funded debt" is unauthorized and illegal. It is conceded by both parties that there was not any "funded debt" as that term is generally understood, or in fact any indebtedness outside of the bond issues previously mentioned, and it is argued by the city treasurer that this item referred to one of the bond issues, but the difficulty is in determining which one or more of the bond issues it does refer to.

Plaintiff in its brief says that by the use of the words "funded debt" it was "probably the intention of the city to create a fund to pay the interest on the indebtedness authorized by Ordinance No. 143, but this is largely speculation." Ordinance No. 143 was the one providing for the $45,000 water bond issue and the $5,000 sewer bond issue. Defendants in their brief claim that the language used related to water bonds, but what particular issue or issues is not stated. We believe it to be clear from the record that the levy "to create a sinking fund for filtration water bonds .001" related to the $65,000 filtration water bond issue made in 1916; that the levy "to create a sinking fund for city hall bonds .00½" related to the $27,000 city hall bonds; and that the levy "to create a sinking fund for sewer bonds .00½" related to the $5,000 sewer bonds, leaving unprovided for the $45,000 water bonds issued in 1905 and the $15,000 water bonds issued in 1908, a total of $60,000, unless it can be said that the levy "to pay interest on the funded debt .004" applies to these two bond issues. But by what process of reasoning are we to argue that it was intended to include these two water bond issues? To sustain such a contention it would have to be assumed, first, that the revenues from the city owned water plant were insufficient for the purpose of paying the interest on these bonds and that the city had so found and declared. But as to these two bond issues there is not anything in the record by which the court could indulge in any such presumption. If the levy had, in specific terms, referred to the one or the other or both of these water bond

issues, then the court would have assumed that the city council had so found. But there is no reference to any water bond issue, and the court is asked to assume that it does so refer. [9] In other words, the court is asked to base a presumption upon a presumption, which of course, it cannot do. A presumption is a deduction which the law expressly directs to be made *from particular facts.* (Sec. 10602, Rev. Codes, 1921.) From one fact proven another may be presumed, if the presumption is a logical result; but to hold that a fact presumed at once becomes an established fact for the purpose of serving as a basis for a further presumption "would be to spin out the chain of presumptions into the regions of barest conjecture." (*Diel* v. *Missouri Pac. Ry. Co.,* 37 Mo. App. 454.)

4. Plaintiff further contends that there could not have been any tax levy made by the city in behalf of the filtration water bond issue, because this issue was in excess of the constitutional three per cent limit of indebtedness, and unless the water plant revenues are not sufficient to discharge the original obligation when due, and pay the interest when it accrues thereon, that a property tax cannot be levied to supply the deficiency. Assuming that the filtration water bond issue was in excess of the three per cent limit of indebtedness authorized by section 6 of Article XIII of the Constitution, then it is true that the revenues from the city owned water plant are irrevocably set aside and dedicated to the discharge of the principal and interest of such bond issue, and a taxpayer who is not a water user cannot be called upon to contribute anything, unless the water plant revenues are insufficient, and then only may a property tax be levied to supply the deficiency. (*Edwards* v. *City of Helena,* 58 Mont. 292, 191 Pac. 387.)

There is nothing in the record in this case to show that the [10, 11] revenues from the water plant were adequate to create a sinking fund for the redemption of the filtration water bonds. The plaintiff concedes that the pleadings and agreed statement of facts do not show this, and it proceeded upon the theory that the burden of proof was on the defendants to make

such a showing. So far as the burden of proof is concerned, the contrary is true. The plaintiff, in order to show the invalidity of the levy for this purpose, must first show that the revenues were sufficient. It is elementary that the burden of proof in this class of cases is always upon the plaintiff to establish the invalidity complained of. The presumption will be indulged, in the absence of evidence to the contrary, that the municipal authorities have complied with the law, and that they made the levy because of the insufficiency of the revenues from the water plant for such purpose. In making this assumption, it is to be noted that there is a material difference in the city's record as to its levy for the purpose of creating a sinking fund for filtration water bonds, and the one for the purpose of paying interest on the funded debt. Here it is clear what the purpose of the levy was, and upon that fact the court could assume that the city council acted regularly. (4 Dillon on Municipal Corporations, p. 2823; Hamilton on Special Assessments, sec. 804; *Great Northern Ry. Co.* v. *Okanogan County* (D. C.), 223 Fed. 198; *Oliver* v. *City of Lynn,* 130 ·Mass. 143; *Wiesmann* v. *Town of Brighton,* 83 Wis. 550, 53 N. W. 911.)

From all the foregoing, the court finds that the levy of one mill "to create a sinking fund for filtration water bonds," and the levy of one-half mill "to create a sinking fund for the city hall bonds," and the levy of one-half mill "to create a sinking fund for sewer bonds" were each valid levies, but that the so-called levy of four mills "to pay interest on the funded debt" is not a legal levy.

The cause is remanded to the district court, with directions to modify the judgment in accordance with the views herein expressed, and, when so modified, it will stand affirmed; each party to pay his own costs.

Associate Justices Cooper, Holloway and Galen concur.