## LUND v. TOWN OF PETERSBURG.

(Circuit Court of Appeals, Ninth Circuit. December 3, 1923.)

No. 4094.

1. **Municipal corporations ☞864(3)—Municipality in Alaska may be authorized by Congress to issue bonds for special purpose.**

Comp. Laws Alaska, §§ 627, 628, limiting the power of taxation by a municipality to 2 per cent. of assessed valuation, and denying authority to issue bonds or to create any indebtedness or liability in any year, in excess of the current revenues of that year, relate to the use of revenues for ordinary municipal purposes, and there being no constitutional limit upon the taxing power of a municipality in Alaska, Congress may authorize it to issue bonds, if approved at an election, for an extraordinary purpose specified in the act.

2. **Municipal corporations ☞964—Authority to issue bonds implies authority to levy taxes for payment.**

Act Cong. Sept. 29, 1919, authorizing an issue of bonds by a municipal corporation in Alaska for construction of an electric plant, carries implied power to levy taxes necessary to meet the interest on the bonds and to create a sinking fund for payment of the principal when due.

Appeal from the District Court of the United States for Division No. 1 of the District of Alaska; Thomas M. Reed, Judge.

Suit in equity by Paul Lund against the Town of Petersburg. Decree for defendant, and complainant appeals. Affirmed.

Appellant Lund, a taxpayer of Petersburg, Alaska, sued to enjoin the town from the issuance of municipal bonds for the purpose of erecting an electric light plant. The lower court held that he stated no ground for relief, and entered decree against him. He appeals.

Congress authorized the municipal corporation to issue 20-year bonds in any sum not exceeding $75,000 for the purpose of erecting a municipal electric light and power plant and a schoolhouse, of which $50,000 was to be ex-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

pended for the construction and installation of the electric light and power plant and $25,000 for the construction of a public school building. Act of Congress Sept. 29, 1919 (41 Stat. p. 289). The act (section 5) limited the uses of the funds from bond sales to the purposes specified in the act. Interest was not to exceed 7 per cent. The town council was authorized to reserve the right to pay off the bonds at the rate of $5,000 per annum after five years from their date. By amendment of June 8, 1920 (41 Stat. p. 981), Congress authorized an increase in the amount of the bonds theretofore authorized. Pursuant to ordinance special election was held as provided for in the acts of Congress, and ordinance was passed providing for the issuance, sale, maturity, and redemption of the bonds.

Plaintiff alleges that the town has sold, and is about to sell, issue, and deliver $115,000 for the erection of an electric light plant, and that unless restrained the town intends to use the proceeds of the sale of the bonds to acquire property outside its corporate limits for the construction of a municipal electric light and power plant, transmission lines, etc., and that when such plant is erected the town intends to sell electric energy to private individuals and corporations, to be consumed outside the corporate limits of the town, and that thus the town would obligate itself to levy and collect annual general taxes upon real and personal property in the town in excess of 2 per cent. of the assessed valuation of the property in the town, and so will incur a municipal debt in excess of the authority conferred by law. Using round numbers, the population is approximate 1,000, and the total assessed valuation of all taxable property is $599,000, and the total annual revenue from all sources is $34,000, with total disbursements for school and municipal purposes of $30,000 annually. In the act of Congress there is no express provision for the levy of an additional tax for the retirement of the bonds, and the complaint alleges that, unless additional taxes are imposed, the bonds cannot be retired and the interest cannot be paid.

Section 627, Compiled Laws of Alaska, authorizes a town to "assess, levy and collect a general tax for school and municipal purposes not to exceed two per cent. of the assessed valuation, upon all real and personal property, * * *" and section 628 provides that the council shall have no authority to issue bonds or incur any bonded indebtedness, and shall have no authority to incur a greater indebtedness or liability of any kind in any year than the current revenues of the municipality for that year.

H. L. Faulkner, of Juneau, Alaska, for appellant.
Henry Roden, of Juneau, Alaska, for appellee.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). Appellant questions the authority of the town: (a) To levy a tax in excess of 2 per cent. annually upon the assessed valuation within the corporate limits of the city in order to provide for the payment of the bonds and interest; (b) to sell electric energy and power to be used and consumed outside of the corporate limits of the town; and (c) to bind itself to pay the bonds before the expiration of the period prescribed in the acts of Congress authorizing their issue.

[1]. It is clear to us that the special act of Congress gave to the town authority to incur the somewhat unusual expense and to issue bonds as a means of paying for the improvement authorized. The provisions of the Alaska statutes, heretofore referred to, limiting the power of the town to 2 per cent. of the assessed valuation upon all property, and denying authority to issue bonds to incur a debt in an amount in any year greater than the current revenue for the year, relate to the use of revenues for ordinary municipal purposes. With the small population of the town and the present assessed valuation of the property, the

improvements could not be had, except through special congressional enactment. Presumably Congress acted upon knowledge of conditions and advisedly passed the legislation authorizing the town to issue the bonds here being considered.

[2] There is no constitutional limit upon the taxing power of a municipality in Alaska, and Congress, having conferred upon the town council the authority to hold an election and issue bonds for purposes expressed, what may be termed extraordinary purposes, the authority to levy a tax to meet such authorized obligations may be implied. In Loan Association v. Topeka, 20 Wall. (87 U. S.) 660, 22 L. Ed. 455, the general principle is stated by Justice Miller:

"It is therefore to be inferred that, when the Legislature * * * authorizes a county or city to contract a debt by bond, it intends to authorize it to levy such taxes as are necessary to pay the debt, unless there is in the act itself, or in some general statute, a limitation upon the power of taxation which repels such an inference."

The reasoning is that the intention is legally to be inferred from the authority to issue the bonds, provided, always, there is nothing by way of limitation in the act creating the power or by way of inhibition in the general law or the organic act. The decisions go to full extent in sustaining the view that when the power to create a municipal debt exists there is a corresponding power to provide for the payment of the debt. The power to make the provision for the payment, though implied, is conclusively implied and "cannot be overcome except by express words excluding it." County Court v. United States, 105 U. S. 733, 26 L. Ed. 1220; City of Ottawa v. Carey, 108 U. S. 109, 2 Sup. Ct. 361, 27 L. Ed. 669. Whether there is authority in the town to sell electric current to be used outside of the corporate limits is not a question arising upon the existing rights of the parties. It is irrelevant to the material question just decided, and we express no opinion upon the matter.

In the ordinance passed by the town there is a provision (section 7) creating a sinking fund for the payment of the bonds as they mature and the interest thereon; also a provision that the town shall annually levy a tax upon all the real and personal property within the town subject to taxation in an amount sufficient to pay the interest and installments of principal due for the ensuing year, and such amounts as may be required for the payment of interest and installments shall be kept and remain in the sinking fund to be used and applied to the payment of such interest and installments. Another provision (section 2) is that the bonds shall mature at the rate of $5,000 each year from 1928 to 1942, and $40,000 July 1, 1943. The acts of Congress provide that the interest on the bonds shall be paid semiannually, and that the bonds must be redeemed in 20 years, with the right in the municipality to redeem them serially at the rate of not to exceed $5,000 per annum after the first five years. Thus it will be observed that the town by ordinance has construed the Act of Congress as giving to the municipality the right to provide that $5,000 principal of the bonds shall be paid off every year after the first five years. While there is no provision in the acts of Congress for a sinking fund, and none for the levy

of a tax on property within the municipality, under the authorities already cited, the method and means to be used by the municipality for repayment are left to the municipal authorities. We believe it beyond question that it was within the power of the town council, not alone to provide for a tax levy to meet the annual expenses, but also to make provision by tax levy for the creation of a sinking fund for the redemption of the bonds, and necessarily to levy a tax in amount sufficient to pay the interest and installments as required. McQuillin on Municipal Corporations, vol. 5, § 2345; First National Bank v. Sorenson, 65 Mont. 1, 210 Pac. 900; Scotland County v. Hill, 140 U. S. 44, 11 Sup. Ct. 697, 35 L. Ed. 351; Turpin v. Madison County Court (Ky.) 48 S. W. 1085.

The judgment is affirmed.