EVANS, County Judge, v. YOST.

(Circuit Court of Appeals, Eighth Circuit. January 27, 1919.)

No. 5185.

1. MANDAMUS ⬥183—PEREMPTORY WRIT—"SUMMONS"—SERVICE.

Under Rev. St. Mo. 1909, § 1759, defining a summons as the original writ, where not otherwise provided, and section 1760, authorizing service of process by leaving a copy of the petition and writ at the usual place of defendant's abode with some member of his family over 15, *held*, that a peremptory writ of mandamus need not be served personally, but on a member of defendant's family as authorized.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Summons.]

2. COURTS ⬥334—FEDERAL COURTS—CONFORMITY ACT—ISSUANCE OF WRIT OF MANDAMUS.

Under Rev. St. § 918 (Comp. St. § 1544), equity rule 13 (198 Fed. xxii, 115 C. C. A. xxii), and Judicial Code, § 262 (Comp. St. § 1239), *held* that, notwithstanding section 914 (Comp. St. § 1537), known as the conformity act, a federal court, in issuing a writ of mandamus as ancillary to a judgment previously rendered by it, need not conform to the state practice; the issuance of such writ being governed by the same principle as in case of a writ of scire facias.

3. MANDAMUS ⬥141—JURISDICTION—FEDERAL COURTS.

The federal courts have no jurisdiction to issue writs of mandamus, except as ancillary to judgments rendered by them.

4. COUNTIES ⬥192—TAXATION—STOCK SUBSCRIPTION.

Laws Mo. 1859–60, p. 438, § 14, authorizing county courts to subscribe to the stock of a railroad company, necessarily carried with it the authority to levy taxes to pay such subscription.

5. MANDAMUS ⬥112(1)—TAXES—LIMITATIONS.

Though Gen. St. Mo. 1865, c. 63, § 18, limited the tax which a county might impose on account of subscriptions to stock of a railroad company, *held* that, where county court did not levy assessments to defray such liability, notwithstanding judgment against the county, the limitation cannot be invoked to defeat a writ of mandamus to compel judges of the county court to levy taxes to satisfy the judgment on the ground that the tax exceeded the statutory limitation, for the inhabitants of the county had escaped previous taxes which they should have paid, and the accumulation of the debt was caused by neglect of their own officers.

6. JUDGMENT ⬥501—COLLATERAL ATTACK—MANDAMUS.

Error in judgment in proceedings by mandamus against judge of county court, which required levying of taxes to pay judgment against the county, can only be corrected by writ of error, and not by a collateral attack on the judgment in contempt proceedings for refusal to comply therewith.

In Error to the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

On petition by David Yost, assignee of John B. Henderson, Jr., who had recovered a judgment against the County of Dallas, an alternative writ of mandamus was issued against J. S. Evans, one of the county judges of the County of Dallas. Thereafter a peremptory writ was issued, and J. S. Evans was committed for contempt, and he brings error. Judgment affirmed.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The plaintiff in error, respondent in the court below, seeks by writ of error to reverse a judgment, finding him guilty of contempt of court. The undisputed facts are:

That on October 7, 1908, John B. Henderson, Jr., recovered in the District Court of the United States for the Western District of Missouri a judgment against the county of Dallas. Mo., for $1,023,020.19, with interest specified in the judgment, which judgment was duly assigned by Mr. Henderson to the defendant in error. The judgment was on bonds issued by the county of Dallas in 1870–1871, under the provisions of a special act of the General Assembly of the state of Missouri, entitled "An act to incorporate the Laclede & Ft. Scott Railroad Company," approved January 11, 1860. Laws 1859–60, p. 434. Section 14 of that act provided: "It shall be lawful for the county court of any county in the state to subscribe to the stock of said company, or invest its three per cent. fund or any other internal improvement fund belonging to the county, as stock in said road; and for the stock subscribed in behalf of the county, may issue the bonds of the county to raise the funds to pay for same, and to take proper steps to protect the interests of the county, may appoint an agent to represent the county, vote for it, and receive dividends. Any incorporated city, town, or company may subscribe to the stock in said railroad company, and appoint an agent to represent its interests, give its votes, and receive dividends, and may take proper steps to guard and protect the interest of the said city, town or company." This act was silent as to tax levies for the payment of the bonds or interest. At the time these bonds were issued, there was a general statute relating to such subscriptions, which provided: (section 18, page 338, General Statutes of Mo. 1865): "But the total amount of tax levied for railroad purposes in any one year, in any county, city or town, shall not exceed thirty per centum of the subscription made by such county, city or town."

On the petition of the judgment creditor an alternative writ of mandamus was issued by the court requiring the judges of the county court of the county, which under the laws of the state levies all county taxes, to show cause why they should not be compelled to levy and cause to be collected a tax to pay the judgment of the relator. A return was made to the writ, and on May 1, 1912, after a hearing, the court granted a peremptory writ of mandamus, directing the county judges to levy. for the current fiscal year, 1912, a special tax to realize the sum of $70,500 upon the taxable property of the county, and when collected to be paid on the judgment. This writ was disobeyed, and no tax whatever levied, although duly served on the respondents. At the April term, 1913, of the court, the relator filed another petition for mandamus, in which it was alleged that at the October term, 1912, writs of attachment for contempt had been issued by the court against the county judges and placed in the hands of the United States marshal for the district, but could not be served, as they evaded arrest by concealing themselves. The prayer was to the effect that they be required to levy a tax to raise the said sum of $70,500 for the year 1912, and a tax to collect a similar sum for the year 1913, or in the aggregate sum of $141,000. The petition further prayed that the marshal should serve the alternative writ, when issued, on each of the respondents in person, if they be found by diligent search, and, if either of them cannot be found by diligent search, the delivery of a copy thereof to be delivered to a member of the family of such defendant over the age of 15 years at the usual place of abode of such defendant. The court granted the petition for the alternative writ at the April term, 1913, and that it be served as prayed in the petition. Nothing was accomplished under this order.

At the April term, 1917, another petition, reciting the facts as set out in the petition of 1913, that no tax has ever been levied to pay this judgment, prayed that they be required to levy a tax to net $70,500 for each of the years 1912, 1913, and 1917, a total sum of $211,500, to be served in the same manner as provided by the judgment entered in 1913. The court made an order in conformity with the prayer of the petition. The marshal's return shows that being unable, after diligent search, to serve the plaintiff in error with the writ, he "delivered a certified copy of it to Ruby Evans, a member of the family of J. S. Evans, associate judge of the county court of said county, over the age of 15 years, in the absence of J. S. Evans, whom I was unable to

locate after diligent search." At the October term, 1917, the cause came on for hearing, whereupon the court found that the respondent had been properly served with the alternative writ, and granted the peremptory writ as prayed in the petition, directing service thereof on the defendants in person, "if they can by diligent search be found, and, if they cannot be found by the marshal after diligent search, then by delivering a copy of said writ to a member of the family of said defendant who cannot be found over the age of 15 years at the usual place of abode of such defendant."

The marshal's return shows the service on the defendant Evans was made by delivering a certified copy of the writ to Ruby Evans, in the same manner as shown by his return of service of the alternative writ hereinbefore set forth.

On March 27, 1918, the defendant in error filed a petition for attachment against the three· county judges, including the plaintiff in error, setting out the proceedings hereinbefore recited, and that with full knowledge and due notice of the order of the court, and of the peremptory writ, and of all the proceedings prior thereto, but with the intent to attempt to defeat the ends of justice, and to hinder and delay the enforcement of the order of the court, they have entirely failed to comply with the commands of the peremptory writ of mandamus, and have failed and refused to make the levy as directed to be made by said writ, and in all things have failed to comply therewith, and· have by their actions defied this court, and disobeyed the writ and mandate of this court, and are now in open, palpable, and flagrant contempt of this court. Upon presentation of this petition the court ordered an attachment of the bodies of the defendants. The writs were duly issued and the plaintiff in error arrested by the marshal. The plaintiff in error thereupon filed a motion to quash the peremptory writ of mandamus and the attachment issued and founded thereon, assigning as grounds therefor:

"First. There is no authority under the law for the levying of $211,500 for the purpose stated and required by said writ of mandamus, and the petitions upon which said writ is founded so state and declare.

"Second. There was no service of said writ of mandamus on this defendant as required by law, and the marshal's return so shows.

"Third. The writ of mandamus was not properly served by the delivery of a copy thereof to a member of this defendant's family over the age of 15 years at his usual place of abode.

"Fourth. The writ of mandamus was not issued and served in the manner required by law, and no writ of attachment could issue thereon."

Upon a hearing the motion was overruled by the court, and the plaintiff in error, resting on the motion, was adjudged by the court to be guilty of contempt and sentenced to imprisonment.

The assignments of error are:

"First. The court erred in overruling the motion filed by this defendant, J. S. Evans, on April 1, 1918, to vacate, set aside, and quash the writ of mandamus, issued herein on the 8th day of October, 1917, the return of the marshal thereon, and the attachment issued and founded on said writ of mandamus, and dated on the 22d day of January, 1918, and to discharge this defendant from said attachment.

"Second. The court erred in sentencing this defendant, to the jail of Jackson county, Missouri, under the records and showing in this cause."

W. C. Hawkins and John S. Haymes, both of Buffalo, Mo., for plaintiff in error.

W. D. Tatlow and E. Y. Mitchell, both of Springfield, Mo., for defendant in error.

Before SANBORN, Circuit Judge, and TRIEBER, District Judge.

TRIEBER, District Judge (after stating the facts as above). [1] It is contended that a peremptory writ of mandamus must be served personally, and as the writ in this case was not served on the plaintiff

in error in person, but only on a member of his family, as authorized by the order of the court, he need not obey it.

There is no statute of the state of Missouri regulating the service of writs of mandamus, but section 1759, art. 4, c. 21, Mo. Rev. St. 1909, defines the summons as the original writ where not otherwise provided. Section 1760 of that chapter authorizes service of process:

"Third. By leaving a copy of the petition and writ at his usual place of abode, with some person of his family over the age of fifteen years."

[2, 3] There is no reason why this provision of the statute is not broad enough to authorize service of a writ of mandamus in the manner prescribed. But, even were it otherwise, we are of the opinion that the national courts are not controlled by state statutes, but may prescribe such rules and orders, as may be necessary. Section 918, Rev. St. (Comp. St. § 1544), provides:

"The several Circuit and District Courts may, from time to time, and in any manner not inconsistent with any law of the United States, or with any rule prescribed by the Supreme Court under the preceding section, make rules and orders directing the returning of writs and processes, the filing of pleadings, the taking of rules, the entering and making up of judgments by default, and other matters in vacation, and otherwise regulate their own practice as may be necessary or convenient for the advancement of justice and the prevention of delays in proceedings."

Section 262, Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1162 [Comp. St. § 1239]), provides:

"The Supreme Court and the District Courts shall have power to issue writs of scire facias. The Supreme Court, the Circuit Courts of Appeals, and the District Courts shall have power to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law."

In Collin County National Bank v. Hughes, 152 Fed. 414, 81 C. C. A. 556, and on rehearing 155 Fed. 389, 394, 83 C. C. A. 661, this court passed on the question of the issuance of a writ of scire facias. After a careful review of the authorities it was held under section 716, Rev. St. (now section 262 of the Judicial Code), the national courts are not restricted by the methods prescribed by the state practice, and may order writs of scire facias to revive judgments to be served outside the state. In Hills & Co. v. Hoover, 220 U. S. 329, 336, 31 Sup. Ct. 402, 405 (55 L. Ed. 485, Ann. Cas. 1912C, 562), it was held:

"It follows that where the state statute, or practice, is not adequate to afford the relief which Congress has provided in a given statute, resort must be had to the power of the federal court to adapt its practice and issue its writs and administer its remedies so as to enforce the federal law."

As the writ in this case was issued, not in an original action, the national courts having no jurisdiction to issue writs of mandamus, except as ancillary to its judgments rendered by it, the writ cannot be distinguished from a writ of scire facias to revive a judgment. In Memphis v. Brown, 97 U. S. 300, 302 (24 L. Ed. 924), it was held that:

"A mandamus to collect a tax for the payment of a judgment, or a mandamus to pay a judgment, is process in execution, and nobody heretofore has ever questioned the power of a court to control its own final process."

As the court found that, owing to the willful acts of the respondents in the mandamus proceedings, by concealing themselves to evade service of process, the court below, for the purpose of preventing a failure of justice, prescribed for a service which is in effect the same as is authorized by the statutes of Missouri. Equity rule 13 (198 Fed. xxii, 115 C. C. A. xxii) authorizes such service of subpœnas in equity, even if there is not willful evasion of the service of process. Therefore, even if the state statutes had required a personal service, and none other, it would not be binding on the national courts.

In construing section 918, Rev. St., it has been held that a summons made returnable according to a rule of the federal court, and not in conformity with a changed state statute, is proper. Shepard v. Adams, 168 U. S. 618, 18 Sup. Ct. 214, 42 L. Ed. 602; Boston & Maine R. R. v. Gokey, 210 U. S. 155, 28 Sup. Ct. 657, 52 L. Ed. 1002. In Van Doren v. Pennsylvania R. R., 93 Fed. 260, 269, 35 C. C. A. 282, 290, the court, in reply to a contention that the national courts must, under section 914, Rev. St. (the Conformity Act, Comp. St. § 1537) follow the practice of the state courts in which it is held, said:

"The Circuit Courts are not bound to conform to state practice or pleadings in subordinate details where such conformity would result in gross or substantial injustice to litigants."

It is not even claimed that he had no notice of the granting, issuance, and service of the writ in conformity with the order of the court.

In view of these facts, we are of the opinion that the order of the District Court for the service of the writs was authorized by the laws of the United States, and the service was sufficient.

[4] It is next claimed that the judgment awarding the peremptory writ is absolutely void, as the general law of the state, in force when the bonds, upon which the relator's judgment was based, hereinbefore quoted from General Statutes of Mo. 1865, limited the tax, which may be levied for railroad purposes in any one year, to 30 per centum of the subscription made by a county, and the writ, which the plaintiff in error was charged to have disobeyed, commanded a greater levy than 30 per cent. of the subscription.

Although there was no express provision in the act, by authority of which the bonds upon which relator's judgment is based were issued, to levy a special tax for their payment, it has been conclusively determined by the Supreme Court in actions arising under acts of the state of Missouri, containing the identical provision found in this act, that the power to tax is necessarily an ingredient of such power to contract. Ralls County Court v. United States, 105 U. S. 733, 736, 26 L. Ed. 1220; Scotland County Court v. United States, 140 U. S. 41, 45, 11 Sup. Ct. 697, 35 L. Ed. 351. The fourteenth section of the act provided:

"It shall be lawful for the county court of any county in the state to subscribe to the stock of said company, * * * and for the stock subscribed in behalf of the county may issue the bonds of the county to raise the funds to pay for same, and to take proper steps to protect the interests of the county."

In the cases cited it was held that such a provision carried with it the power to levy a tax to pay bonds issued thereunder.

[5] Assuming that the special act, under which the bonds were issued, is subject to this general act (but see Bunch v. United States, 252 Fed. 673, 679, —— C. C. A. ——, decided by this court, Sept. 2, 1918) the contention is untenable.

When the first peremptory writ of mandamus was issued in 1912, it only commanded a tax levy to produce $70,500. The county court disobeyed this mandate. Thereupon another petition for a mandamus was filed in 1913, alleging that fact, and asking for a peremptory writ to compel the levy of a tax for the two years, for $70,500 each, or a total of $141,000. This was granted, but again the county court refused to levy any tax, as commanded. When in 1917 the relator filed the third petition for a mandamus, he set out the failure and refusal of the county court to levy the taxes as commanded for the years 1912 and 1913, and prayed for a mandamus, commanding the county court to levy in the aggregate sum of $211,500, to make up the amounts, which should have been levied and collected in obedience to the writs issued in 1912 and 1913, and to be levied for the year 1917, and the court granted this prayer of the petition.

In East St. Louis v. Amy, 120 U. S. 600, 604, 7 Sup. Ct. 739, 741 (30 L. Ed. 798), the same question was involved, except that no writs of mandamus had been issued therefor, and the court held:

"The law required a tax to be levied annually sufficient to pay all interest as it accrued, and the principal when due. This was neglected, and consequently there is now a large accumulation of a debt which ought to have been paid in installments. Thus far the inhabitants have been allowed to escape taxation at the times it ought to have been laid, and to which they were under constitutional obligations to submit. The accumulation of the debt was caused by their own neglect as members of the political community which had incurred the obligation. Such being the case, we see no reason why it was not in the power of the court to order a single levy to meet the entire judgment, which was all for past-due obligations. Whether such a tax would be so oppressive as to make it proper not to have it all collected at one time was a question resting in the sound discretion of the court in ordering the collection. There is nothing here to show that there ought to have been a division."

To the same effect are Hicks v. Cleveland, 106 Fed. 459, 465, 45 C. C. A. 429; Padgett v. Post, 106 Fed. 600, 603, 45 C. C. A. 488.

[6] Again, if the court erred in requiring too large a tax levy, the error could only be corrected by writ of error, and not by a collateral attack on the judgment, as is attempted in this proceeding. Bunch v. United States, supra, where the authorities are collected.

The judgment is affirmed.