Argued July 20; writ of mandamus denied plaintiff and allowed
intervener October 18; rehearing denied December 30, 1932

## MORRIS, MATHER & CO. *v.* PORT OF ASTORIA ET AL.
## (STATE EX REL. HOLMAN, INTERVENER)

(15 P. (2d) 385)

*Albert B. Ridgway,* of Portland (Ridgway, Johnson & Kendall, of Portland, on the brief), for plaintiff.

*G. C. Fulton,* of Astoria (G. C. & A. C. Fulton, of Astoria, on the brief), for defendants.

*Fred H. Paulus,* of Salem, and *Willis S. Moore,* Assistant Attorney General (I. H. Van Winkle, Attorney General, on the brief), for intervener.

*John W. Shuler,* of Portland, amicus curiae.

ROSSMAN, J. Undenied allegations of the pleadings and a stipulation signed by the parties establish the following facts: The Port of Astoria, whose boundaries are the same as those of Clatsop county, is a municipal corporation organized pursuant to the provisions of sections 65-701 to 65-801, Oregon Code 1930. Pursuant to the provisions of section 65-708, subd. 8, the municipality issued bonds of which $3,670,000 were outstanding January 1, 1932. In December of 1930, when the commissioners of the port prepared its annual budget, showing the amount of tax money needed for the ensuing twelve months, they were faced with the fact that on July 1, 1931, interest coupons to the extent of $96,037.50 would become payable, together with a like amount and $100,000 of bonds on January 1, 1932. Thus, in the levy made in December of 1930 it was necessary to make provisions for $192,075 interest and $100,000 principal money with which to satisfy those obligations. Since 'the commissioners anticipated that a large number of taxpayers would fail to pay the tax about to be levied, and being desirous of securing a return sufficient to meet needs, they added to the aforementioned interest item of $192,075 a margin of $31,000, and to the principal item of $100,000 the additional sum of $18,500. Thus, they inserted in their budget the item of $223,075 to provide sufficient interest money, and $118,500 to take care of principal. At taxpaying time delinquencies

were so great that the tax collector received, up to January 1, 1932, only $118,586.23 upon the interest item, and $62,994.35 upon the principal item. All of the parties to this proceeding anticipate that additional sums will be received, but agree that they will be insufficient to enable the port to discharge in full the above obligations of principal and interest. July 1, 1931, the port paid the semiannual interest due upon that day, aggregating the aforementioned sum of $96,037.50, and thus had left in its interest money fund only $22,548.73 with which to meet the January 1, 1932, installment. January 1, 1932, the plaintiff was the owner of the interest coupons in the amount of $12,535, and the intervener, the State of Oregon, was the owner of $37,000 of bonds issued by the port, and payable on that date, as well as interest coupons in the amount of $1,925 likewise due and payable. When the defendants found themselves confronted with the situation of an insufficient amount of cash with which to satisfy the above obligations, they submitted to the bondholders an offer to pay on account to all owners of interest coupons such a reduced amount as the $22,548.73 of cash bore to $96,537.50. The plaintiff rejected the offer, but the State expressed a willingness to accede to it.

The plaintiff contends that although the port possesses only $22,548.73 cash available for payment of interest, and owes $96,037.50 interest, yet it is entitled to the relief it seeks; namely, a writ directing the defendants to pay to it $12,535. In support of its contention it argues that the defendant port's interest and principal obligations are payable, not out of a closed limited fund but through an inexhaustible power of taxation which, when exercised, will readily replenish the port's treasury with cash, thus enabling

it to discharge its obligations to the other bondholders. The delay which would confront the latter in the collection of their claims, the plaintiff contends, would be nothing more than the penalty tardiness exacts from those who delay their applications for relief. It also points out that the port's promises in the interest coupons are unconditional, and argues that the defendants, therefore, should not be permitted to assert that payment to the plaintiff will jeopardize the rights of other bondholders. The plaintiff insists that such a defense, if available, can be submitted only by bondholders. The defendants argue that the statutes authorizing taxation by ports (§ 65-708) permit them to levy a tax for the payment of interest and principal in an amount no greater than the total of all interest and principal payable in the ensuing year, and that since they did so the bondholders must be content with their appropriate share of the taxes collected. The State, as intervener, after insisting that the port must anticipate delinquencies, and levy for an amount sufficient to discharge in full all interest and principal items, argues: (1) That the complaint's prayer asks for payment of interest coupons out of funds levied for the payment of principal, and that, hence, all relief must be denied; (2) that principal and interest moneys are payable to bondholders through the fiscal agency of the port (the Chase National Bank of New York) and that since the plaintiff asks for payment to it directly, the prayer must be denied; (3) that since the relief sought asks for the payment of interest upon the overdue interest, the prayer must be denied; (4) that the port has no inexhaustible source from which to meet its obligations and that, hence, each bondholder should share proportionately and none should secure complete relief; and (5) that an allow-

ance of the relief sought by the plaintiff would precipitate a multiplicity of mandamus proceedings. From the State's pleading we quote the following paragraph, which is not denied by either the plaintiff or the defendants:

"There is no inexhaustible source from which intervener may enforce payment of the principal and interest now due it on bonds and interest coupons of said defendant port district which matured January 1, 1932, and if payment of the interest alleged to be due plaintiff be made as commanded in the alternative writ of mandamus issued to defendants in this cause, intervener and others similarly situated will be thereby deprived of adequate means for the collection of the respective proportionate amounts due it and them from funds now available for the payment of matured bonds and interest coupons of said port district."

The stipulation, signed by the parties, recites:

"It is further stipulated that said special tax levies of December 9, 1930, were duly and seasonably made and duly and seasonably certified to the county assessor as by law provided. That the defendants port and port commissioners have duly and seasonably performed all of its and their duties by law required in the levying, certifying and collection of the above and special taxes."

Section 65-708 provides:

"Such corporation shall have power: * * * 8. Borrowing Money and Issuing Bonds. For the purpose of carrying into effect all or any of the powers hereby granted such corporation shall have the power * * * to borrow money upon any evidence of debt and to sell and dispose of bonds. * * * Such bonds or other evidences of indebtedness shall be executed on behalf of the said corporation by its president and secretary, and shall be so conditioned as that said corporation shall therein and thereby undertake, promise and agree in consideration of the premises,

and be held to pay at a place therein named to the bearer or registered owner thereof the sum named therein in gold coin of the United States, with interest thereon in like gold coin at the rate per annum named therein. * * * 9. Taxation. Such corporation shall have power, and there is hereby granted to it the power, to assess, levy and collect taxes upon all property, real and personal, situated within its boundaries * * * each year not to exceed one per cent, the proceeds of which shall be by it applied in carrying out the objects and purposes hereinbefore provided; and such corporation shall also have the power each year to assess, levy and collect a special tax upon all such property, real and personal, in an amount sufficient to pay the yearly interest on bonds or other evidences of indebtedness theretofore issued by such corporation and then outstanding, together with any portion of the principal of such bonds maturing within such year. * * * The special tax hereby authorized shall be applied only in payment of interest and principal of bonds issued by such corporation * * * but such corporation shall have power to apply any funds derived from the regular annual tax toward the payment of such principal or interest upon such bonds.''

■ Before proceeding to construe the language of the statute, we take notice of the well-established rule that when authority is conferred upon a municipality to issue securities and borrow money upon them the law implies, in the absence of clear manifestation to the contrary, that there has also been conferred upon the municipality power to levy taxes for the retirement of the loan at its maturity and for the payment of interest in the meantime: *Scotland County Court v. Hill,* 140 U. S. 41 (11 S. Ct. 697, 35 L. Ed. 350); *Quincy v. Jackson,* 113 U. S. 332 (5 S. Ct. 544, 28 L. Ed. 1001); *Ralls County Court v. United States,* 105 U. S. 733 (26 L. Ed. 1220); *Lund v. Town of Petersburg,*

293 Fed. 893; *Evans v. Yost,* 255 Fed. 726; *City of Eugene v. Willamette Valley Co.,* 52 Or. 490 (97 P. 817); *Avery v. Job,* 25 Or. 512 (36 P. 293); McQuillin, Municipal Corporation, (2d Ed.) § 2504. Accordingly, unless clear and unmistakable language in the statutes governing ports deprives them of the power to levy a sufficient tax to provide interest money, and also funds for the retirement of their indebtedness at its maturity, the defendants possess such power. The above cited authorities also hold that the bondholder is not dependent exclusively upon some special fund created for the retirement of the indebtedness unless the statute clearly limits payment to that fund.

Reverting to the portion of subd. 8 of section 65-708, Oregon Code 1930, quoted above, it will be seen that the statutes of this state provide that when the bonds are written they "shall be so conditioned as that said corporation shall * * * be held to pay * * * the sum named therein in gold coin * * * with interest thereon in like gold coin." The bonds issued by the Port of Astoria, and owned by the State, recite: "The Port of Astoria, in the County of Clatsop, in the State of Oregon, acknowledges itself indebted and hereby undertakes and promises to pay to the bearer hereof the sum of $1,000 in United States gold coin, of the present standard of weight and fineness, for value received, on the first day of January, A. D. 1932, with interest thereon in like gold coin at the rate of five per centum per annum payable semi-annually * * *."

The first problem for solution is whether the afore-mentioned law which authorizes ports "to assess, levy and collect a special tax * * * in an amount sufficient to pay the yearly interest on bonds or other evidences of indebtedness theretofore issued by such

corporation and then outstanding, together with any portion of the principal of such bonds maturing within such year'' contemplates that the amount of the tax shall be exactly equal to the aggregate of the interest and principal items falling due within the ensuing year, or whether the tax shall be sufficiently large to yield the sum needed for the interest and principal items which must be met in the following twelve months' period of time. The defendants not only contend for the first of the above two propositions but also urge that the port has no authority to levy a supplemental tax in the event that the first levy fails to produce the needed sum, and in addition argue that the proceeds of the next annual tax cannot be applied toward the discharge of arrearages. We assume that tax collectors rarely succeed in collecting the entire tax for which a levy has been made, and, hence, if the defendants' contentions are correct the owners of bonds issued by the ports of this state would not be paid the sums promised them in the ports' undertakings.

█ █ Again reverting to the quoted portion of section 65-708, it will be seen that that section of our laws grants to ports the power to assess and collect two taxes: (a) a regular annual tax, and (b) a special tax. The proceeds of the former are primarily intended to discharge the operating expenses of the port, but by the express language of the act may be applied ''toward the payment of such principal or interest upon such bonds.'' The special tax, according to the statute, ''shall be applied only in payment of interest and principal of bonds.'' Based upon the principles of law mentioned above, it will be observed that the owner of port bonds is not compelled to look to the special tax only for payment of the securities held by him. The

statute makes the indebtedness the general obligation of the municipality. It will also be observed from the language quoted that the port must pay the indebtedness mentioned in the bond "in United States gold coin." That direction repels the contention advanced by the defendants that the mere ceremony of levying a tax suffices to discharge an annual installment of interest and principal even though a substantial amount of the tax is never paid. It will also be recalled from subd. 9 of section 65-708 quoted above that the port possesses the power "to assess, levy and collect a special tax  *  *  *  in an amount sufficient to pay the yearly interest on bonds or other evidences of indebtedness theretofore issued by such corporation and then outstanding, together with any portion of the principal of such bonds maturing within such year." "An amount sufficient to pay the yearly interest on bonds *  *  *  together with any portion of the principal of such bonds maturing within such year" means an amount which takes into consideration delinquencies. Any levy which returns less than the needed sum is an insufficient one. The authority to levy for the increased amount is conferred by the words above quoted. We call attention to the following taken from Cooley on Taxation (3d Ed.) 589: "It is not incompetent for a municipality having power to levy a tax for a specific purpose to add an item to provide for possible deficiencies in collection." See also *The Village of Hyde Park v. Ingalls,* 87 Ill. 11, and McQuillin, Municipal Corporations (2d Ed.) § 2545. We are firmly convinced that the above statute authorized the port commissioners to levy a tax in an amount which would fully defray all interest and principal charges which the port would have to meet in the ensuing twelve months' period of time.

■ The power to levy and collect the needed tax, which we have just pointed out is possessed by the port, is not one which the port may or may not exercise according to its pleasure, but is one with which the port has been invested for the protection of those who own its securities. It is not merely permissive in nature but mandatory. It is a power which the courts will compel the port officials to exercise if they should become neglectful of that duty.

■ We have thus seen that it was the duty of the port to impose a sufficient annual tax to meet the demands of its bondholders. An unfortunate condition in the finances of any municipality which has imposed a crushing burden of taxation upon the people who reside within its boundaries can no more justify a failure to levy a sufficient tax to raise needed sums than could a heavy debt burden excuse an individual from selling properties owned by him in order to raise cash with which to satisfy his creditors. Heavy burdens of debt, although they provoke sympathy for those who struggle under them, can never prompt a court to erase from the bond anything which the debtor wrote there. All other courts, confronted with creditors who sought from debt-burdened municipalities that which was promised in their bonds, have declared, as we have above, that the court's chambers do not constitute a haven of refuge for the debt-harassed municipality. We have taken the following excerpt from the decision of the Federal Supreme Court in *City of Galena v. Amy,* 5 Wall. 705 (18 L. Ed. 561):

"The Counsel for the plaintiffs in error has called our attention, with emphasis and eloquence, to the diminished resources of the city, and the disproportionate magnitude of its debt. Much as personally we may regret such a state of things, we can give no

weight to considerations of this character, when placed in the scale as a counterpoise to the contract, the law, the legal rights of the creditor, and our duty to enforce them."

The problem now presents itself whether the plaintiff is entitled to a writ directing the defendants to pay to it $12,535 out of the fund of $22,548.73 which it possesses for the payment of $96,037.50 semi-annual interest. This is not a proceeding to compel the defendants to levy a supplemental tax to yield the balance of the needed sum, as in *State v. McClain,* 132 Or. 561, (286 P. 590), and *State v. McClain,* 136 Or. 53 (298 P. 211), but is in reality a controversy between the bondholders. We need not decide whether the defendants can assert a defense on behalf of silent bondholders because the state, in its capacity of a bondholder, submits such a defense and urges that payment to the plaintiff of the full amount due to it will jeopardize the rights of other bondholders. The plaintiff, after asserting in its brief, "The Port of Astoria is not insolvent  *  *  * the Port of Astoria is solvent even though it may not have the immediate power to pay in cash all of its matured obligations, because it possesses unlimited power of taxation by which it may raise funds necessary to pay its debts as they mature," urges that the inexhaustible power of taxation granted to the port by the aforementioned statute will readily enable it to secure sufficient funds with which to discharge the claims of all creditors. Having thus declared that the port possesses sources of income which it can employ for the satisfaction of the demands of all of its creditors, the plaintiff urges that no reason exists for awarding partial payment only. The rule invoked by plaintiff is thus stated in *Voorhies v. City of Houston,* 70 Tex. 331 (7 S. W. 679):

"When, however, there is a means through which all the creditors may be paid in full, the reason for directing a pro rata payment does not exist, and that one creditor, by the exercise of a higher degree of diligence than exercised by another, may secure payment at an earlier day than does the other, furnishes no reason why such other creditor, much less the debtor, should be heard to complain because a pro rata payment was not directed. As we have already seen, the city has power to levy such taxes as are necessary to satisfy every debt legally made and undertaken, existing at the time the present constitution was adopted, and there can be no pretense of its want of ability to raise means sufficient to pay in full every debt of that character."

Preceding these statements, the court declared:

"The grounds upon which a creditor should be restricted to a pro rata payment, we are of the opinion, do not exist in this case. If there be a fund to which more than one creditor is compelled to look as the only source from which their claims can be paid, and this be insufficient to pay in full, then it is manifestly just, none of the claims having a preference, that the fund should be distributed pro rata."

Other decisions involving municipal indebtedness in which the foregoing rule was applied or stated are: *State v. Carlton* (Fla.), 138 So. 612; *State ex rel. Marschand v. City of New Orleans,* 37 La. Ann. 13; *State ex rel. Smith v. Hall,* 94 W. Va. 400 (119 S. E. 166); *State v. Livingston* (Fla.), 139 So. 360; *State v. Curry* (Fla.), 139 So. 891.

It seems evident that if a municipality has ample resources from which it can draw sufficient cash to satisfy all of its creditors, no more reason exists for sending away one of its creditors partially satisfied than if the debtor was an individual. But it will be recalled from the review of the state's pleading set forth

above that it alleges: "There is no inexhaustible source from which intervener may enforce payment of the principal and interest now due it on bonds and interest coupons of said defendant port district which matured January 1, 1932, and that if payment of the interest alleged to be due plaintiff be made as commanded in the alternative writ of mandamus issued to defendants in this cause, intervener and others similarly situated will be thereby deprived of adequate means for the collection of the respective proportionate amounts due it and them from funds now available for the payment of matured bonds and interest coupons of said port district." As previously stated, this allegation is not denied by anyone. The stipulation of facts signed by the parties makes no mention of the taxpaying ability of the people living within the boundaries of the port, and plaintiff's pleadings are silent upon that subject. But the briefs of the parties, including that of the plaintiff, make frequent references to the deplorable tax situation of Clatsop county and its subdivisions. For instance, in describing this condition, plaintiff's brief employs the phrase, "their troublesome debts and muddled affairs." In another place it declares, "the debt ratios of the city of Astoria and other cities in Clatsop county are admittedly large." The 1923 session of our Legislature took notice of the tax and debt problem of the city of Astoria. As a preamble to chapter 280 of that year's statutes, it set forth:

"Whereas on the eighth day of December, 1922, the city of Astoria, Oregon, was swept by a fire which destroyed property of the value and extent of more than eleven million dollars ($11,000,000); and  *  *  *

"Whereas said fire has left the city of Astoria and its people financially prostrate, with a present total

assessed valuation of less than eight million dollars ($8,000,000), against which there now stands a municipal debt of more than five million five hundred thousand dollars ($5,500,000) ; and

"Whereas its large bonded indebtedness makes it impossible for said city to place additional liens upon its property for the purpose of raising money; and * * * ''

The act just mentioned appropriated to the city of Astoria the state taxes paid by the taxpayers of that city during the following seven years to enable the city to rebuild public property destroyed by the fire. In *Kinney v. Astoira*, 108 Or. 514 (217 P. 840), wherein this court sustained the validity of that appropriation, the decision pointed out that the above-quoted recitals of the preamble constituted legislative findings of their truth.

Since 1923 the city of Astoria, wherein is concentrated the largest aggregation of wealth in Clatsop county, has defaulted in substantially all of its bonded indebtedness. It is true that we have not gathered this fact from the record in this case, but the matter just stated is so well known that if we were to assume to be unaware of it we would avow a degree of ignorance possessed by but few other residents of this state. Moreover, the defaulted condition of the city's bonded indebtedness is recited in ordinances enacted by the city council of Astoria and in a recent decision of this court. See *Halderman v. City of Astoria*, 140 Or. 160, (13 P. (2d) 358). It is likewise well known that the city of Warrenton, also located in Clatsop county, has defaulted in the payment of its bonded indebtedness. Resorting to sources of information to which we have access under the rules governing judicial notice (§ 9-

302, subd. 3, Oregon Code 1930, and 23 C. J., Evidence, p. 94, § 1885) we find that the assessed valuation of taxable wealth within the boundaries of the Port of Astoria has declined from $41,560,104 in 1920 to $27,-281,157 in 1932, and that approximately 50 per cent of all taxes in the county are delinquent. The debt ratio of Astoria is 62 per cent of the assessed valuation without considering the port and school debts and county warrants.

■ The plight of the defendant port is not a novelty among debtors. The Port of Port Orford, being one of the thirteen Oregon ports organized pursuant to the above statute, has defaulted in the payment of its bonded indebtedness. Almost every issue of the daily press in these heart-rending times of world depression presents to us the unwelcome news of a financial failure of some institution which three years ago seemed impregnable. Defaults in the payment of bonded indebtedness include many nations which in the past have commanded good credit. In fact, virtually all of the republics to the south of us have been unable to keep their bonded indebtedness in good standing. Strong European governments in an effort to avoid financial collapse have foregone the gold standard and have resorted to debased currency. The vast number of defaults in meeting principal and interest installments by private corporations have become so commonplace that they no longer achieve mention in the news columns or excite comment. Defaults in discharging debts among municipalities have become so numerous that legislatures have made provision for a form of municipal receiverships. See, for instance, 1931 Laws of New Jersey, page 830, and 1931 Acts and Resolves of Massachusetts, page 562. For comment see Vol. XX,

No. 4, National Municipal Review, page 201. When default occurs interest is more frequently scaled than principal: State and Municipal Bonds by Raymond, page 274. Excessive indebtedness of municipalities which constituted a heavy burden in normal times has taken upon itself increased proportions under the stress of today's difficult circumstances. The debt was incurred in most instances in the days of easy prosperity when the dollar had a diminished purchasing power and must now be repaid when it possesses a purchasing power much in excess of its normal value. Thus, in effect, the debt is very substantially increased. Moreover, it is far more difficult today for the taxpayer to secure a dollar with which to discharge his taxes than in the days when the debt was incurred.

■■ The circumstances above reviewed, the facts of which we have taken judicial notice, together with the quoted language of the state's pleading, which no one has contradicted, persuade us that we cannot say that the port possesses inexhaustible resources from which it can secure cash. Whether a supplemental levy at this time would yield the required sum is problematical, especially in view of the fact that the annual levy is only two months away. It was incumbent upon the plaintiff to prove that the resources out of which it sought payment were sufficient to satisfy all. If the fund is insufficient, we revert to the rule that equality is equity. We quote from McQuillin, Municipal Corporations, (2d Ed.) § 2504: "If there are not sufficient funds to pay the bonds all holders should share pro rata." And from Pomeroy's Equity Jurisprudence, (4th Ed.) § 407, we quote: "Whenever several persons are all entitled to participate in a common fund, or are all creditors of a common debtor, equity will award a dis-

tribution of the fund, or a satisfaction of the claims, in accordance with the maxim, Equality is equity; in other words, if the fund is not sufficient to discharge all claims upon it in full, or if the debtor is insolvent, equity will incline to regard all the demands as standing upon an equal footing and will decree a pro rata distribution or payment.'' Dillon in his treatise on Municipal Corporations, (5th Ed.) § 893, states the rule thus: ''None of the bondholders has any right of priority in the fund derived from the assessments. This is a trust fund pledged to the payment of all of the bonds, and the right of the holder of part of the bonds is only such portion of the fund realized as the sum of his bond bears to the entire amount of the issue of the bonds.''

Mandamus is an extraordinary remedy. It issues only in rare instances and only after the right to it has become so clearly established that the discretionary power which protects the writ from abuse finds no occasion for withholding the remedy; in other words, those who seek the writ must first satisfy the courts clearly that they are entitled to the relief which they seek: *Horsefly Irr. Dist. v. Hawkins,* 121 Or. 366, (254 P. 825); *State ex rel. v. Malheur County Court,* 46 Or. 519 (81 P. 368); *Ball v. Lappius,* 3 Or. 55. Since we cannot say that the facts before us bring the plaintiff's cause within the principle of law which it invokes, we must decline to grant to it the relief sought.

As we have previously pointed out, the defendants, in anticipation of the port's inability to pay the interest and principal installments due January 1, 1932, published an offer to pay to the port's bondholders such a proportionate share of the cash in the port's

interest fund as it bore to the sum owing, and renewed that offer in their answer. The state's pleading, after stating that it had previously acquiesced in that plan, prayed for a writ directing the defendants to make the proffered distribution through the port's fiscal agent. We assume that since we cannot grant to the plaintiff complete payment, it is agreeable to partial satisfaction. The prayer of the state will, therefore, be allowed both as to interest and principal distribution.

BEAN, C. J., BROWN, RAND, BELT, CAMPBELL and KELLY, JJ., concur.