[Civ. No. 11322.  Second Appellate District, Division Two.—May 4, 1937.]

DISTRICT BOND COMPANY (a Corporation), Respondent, v. MARION E. CANNON, as City Treasurer, etc., Appellant; ROSINE R. SAULQUE et al., Interveners.

Louis H. Burke and Daniel G. Marshall for Appellant.

Robert H. Dunlap for Respondent.

WOOD, J.—Petitioner seeks by writ of mandate to compel defendant, the treasurer of the city of Montebello, a city of the sixth class, to pay to it the entire balance in her custody of the interest and sinking fund of a district organized under the provisions of the Acquisition and Improvement Act of 1925, notwithstanding the insufficiency of the fund to pay all of the matured bonds. The appeal is by the defendant from a judgment in petitioner's favor.

It is alleged in the petition, which was filed March 7, 1935, that petitioner is the owner of ten series A Acquisition and Improvement District No. 6 bonds of the city of Montebello, numbered 18 to 27, inclusive, each of said bonds being in the principal sum of $1,000, and all of which became due and payable February 5, 1935. Petitioner presented these bonds to the defendant at her office on the due date thereof but payment was refused. At the time of filing the petition there was in the interest and sinking fund of the district the sum of $61.09 only. On April 27, 1936, a supplemental petition was filed in which it is alleged that the interest and sinking fund had been augmented.

In defendant's answer it is alleged that on February 5, 1929, bonds were issued in the aggregate amount of $251,246, bearing interest payable semiannually. These bonds were numbered 1 to 252, inclusive, each of which being in the principal sum of $1,000 except bond No. 252, which was issued in the sum of $246. Bonds Nos. 1 to 17, inclusive, became due February 5, 1934, and annually thereafter 17 other bonds became or will become due. Bonds Nos. 7 to 13, inclusive, which matured February 5, 1934, were paid on February 5, 1934; bond No. 14, due February 5, 1934, was paid April 23, 1934; bond No. 15 due February 5, 1934, was paid May 25, 1934, and bond No. 16, due February 5, 1934, was paid January 16, 1935. Bonds Nos. 1 to 6, inclusive, and 17, which became due February 5, 1934, and bonds Nos. 18 to 34, inclusive, which became due February 5, 1935, were not paid because of lack of funds in the interest and sinking fund. Bonds Nos. 35 to 51, inclusive, became due February 5, 1936. The total sum of $77,915.83 was past due and unpaid on principal and interest before the trial of the action. In the findings, which were dated November 13, 1936, the trial court found that the sum of $61.09 had since the filing of the petition been increased to the total sum of $9,845.20. Defendant set forth in her answer the details of the bonds outstanding and unpaid and of the demands made upon her for payment by the owners of other bonds, some of which were past due, including a demand made February 7, 1934, by the owner of bonds Nos. 1 to 6, inclusive. Defendant further set forth in answer that the land within this improvement district is also subject to the liens of and is encumbered by certain other special assessments, street improvement bonds and general county and municipal taxes in the approximate sum of $600,000,

all of which she asserted to be valid and subsisting liens against said lands. She also alleged that said district and its interest and sinking fund are insolvent and that the reasonable market value of the land within said improvement district is less than the aggregate of the amounts of said special assessments, street improvement bonds, general county and municipal taxes and the unpaid balance of principal and interest of the bonds specifically referred to in this action. A number, but not all, of the owners of other unpaid bonds intervened in the action, asking to have their rights safeguarded, among these being the owner of the bonds which matured February 5, 1934.

None of the owners of other bonds were made parties defendant and a number of them have not intervened. At the trial when petitioner rested its case objection was made to the introduction of testimony on behalf of the defendant and a general demurrer to the amended answer was interposed. The court sustained the demurrer to the answer without leave to amend and denied defendant's request for permission to amend. Judgment was accordingly entered by which defendant was ordered to pay to petitioner the entire sum then in the fund.

Six days after the judgment of the trial court was rendered the Supreme Court of California filed its decision in a case which is determinative of the issue involved herein. In *Kerr Glass Mfg. Corp.* v. *City of San Buenaventura,* 7 Cal. (2d) 701 [62 Pac. (2d) 583], the petitioner sought a writ of mandate to compel payment of the amount of certain bonds which it owned. We quote from the decision: ''The bonds held by the petitioner were presented for payment to the city treasurer, but payment was refused because there was not sufficient money in the bond redemption fund to pay all of the outstanding and matured bonds of said series 'E', although there was sufficient to pay the petitioner in full. . . . The petition shows that the respondents have offered to pay to the petitioner such appropriate amounts from said bond fund on account of interest and principal due it as the amount of such interest and principal bears to the total amounts of interest and principal on all of said bonds, series 'E', still outstanding and unpaid. . . . In its answer the respondent city admits its willingness and offer to pay the petitioner on a *pro-rata* basis, computed on the ratio which the amount due to the petitioner bears to the total amount

still unpaid on all outstanding bonds of series 'E' including those which have not yet matured. The principal question for determination is whether the petitioner is entitled to payment in full from the bond redemption fund, there being sufficient funds for payment to it in full although not sufficient to pay in full all of the matured claims against said fund; or whether it must accept payment on some *pro-rata* basis to be determined.'' The court referred to *Rohwer* v. *Gibson,* 126 Cal. App. 707 [14 Pac. (2d) 1051], and pointed out that it was there concluded that where the sources of the bond redemption fund were not fortified by the authority to resort to a general or ''inexhaustible'' taxing power, the fund becomes a trust fund to be shared by all who hold claims against it without priority one over the other; and that it was appropriately held that where such a fund was insufficient to pay in full all who had claims against it, the petitioner was entitled only to share ratably with the other bondholders. The court further stated that the trust status of the fund has been considered appropriate where it is theoretically replenishable by a so-called inexhaustible taxing power, but the exercise of that power is rendered fruitless by reason of economic conditions resulting in a tax-collecting incapacity. In denying the writ of mandate the court said: ''The same duty arises to divide the funds ratably when it appears that there will not be sufficient to pay all bonds in full, whether or not all are technically presented for payment. No contention is made by the petitioner that there does not in fact exist an insufficiency resulting by virtue of the large percentage of delinquencies and the consequent inability of the city to realize from all available sources sufficient to pay all bonds in full from the redemption fund. With a large percentage of delinquencies and a reduction of the tax-collecting capacity to furnish a surplus in the general fund wherewith to replenish the bond redemption fund, either now or in the reasonably near future, by the amounts of improvement assessment installments falling due on delinquent property subsequent to its sale to the city, it can scarcely be doubted that the city has ,properly declared the bond redemption fund insolvent.'' The court cited *Morris, Mather & Co.* v. *Port of Astoria,* 141 Or. 251 [15 Pac. (2d) 385], a case in which the *pro-rata* rule was applied.

Petitioner relies upon the general rule that where resort may be had to an inexhaustible taxing power the owner of

bonds first to sue may recover the amount available in the fund. But the answer of defendant showed that the taxing power was not inexhaustible and that the district was in fact insolvent. Evidence should have been permitted to substantiate the allegations of the answer.

■ Petitioner criticizes the answer and contends that the allegations showing the insolvent condition of the district are insufficiently set forth, especially referring to the fact that certain allegations are made upon information and belief. The demurrer was general and not special. A failure to state any fact or facts in a pleading essential to a recovery or a defense may be reached by a general demurrer, but if the facts be stated imperfectly the demurrer to be effectual must be special and directed against the defect in question. (*Singh* v. *C. H. & O. B. Fuller Co.*, 39 Cal. App. 613 [179 Pac. 710]; *Harnish* v. *Bramer*, 71 Cal. 155 [11 Pac. 888].) Petitioner may not rely upon the assumption that all of the bonds are fortified by an inexhaustible taxing power when defendant was erroneously prevented from proving the insolvency of the district which issued them.

■ Petitioner asks us to dismiss the appeal upon the contention that defendant is not an aggrieved party, citing section 938 of the Code of Civil Procedure, and relying upon the general rule that as between the parties interested in the estate, executors, receivers and other custodians of funds are not ordinarily affected by orders in reference to their disposition and therefore will not be heard on appeal from such orders. This general rule is limited in its scope and does not become operative in cases involving the construction of the proper exercise of the duties of the officer presenting the appeal. Lack of personal interest does not prevent a public officer against whom a writ of mandate has been issued from prosecuting an appeal. (*Moore* v. *Muse*, 47 Tex. 210; *In re Kenney*, 153 App. Div. 325 [137 N. Y. Supp. 1097].) The rule that an executor does not represent any of the heirs as against the others and therefore may not appeal from a judgment determining the rights of the heirs among themselves is subject to the qualification that the executor has the general duty of protecting the estate. In *Estate of Snowball*, 156 Cal. 235 [104 Pac. 446], the executrix appealed from an order making a family allowance to two minor children. In upholding her right of appeal the court said: "The appellant, in her own behalf, has no sufficient interest in the matter at

issue to entitle her to maintain an appeal. She has no personal interest in the estate and hence she is not a party aggrieved. As executrix she has, abstractly speaking, a duty to perform in protecting the estate from depletion by an extravagant family allowance. She is therefore, as executrix, technically a party aggrieved, and as such she has a right to maintain the appeal." *Estate of Welch,* 106 Cal. 427 [39 Pac. 805], is a case in which the court upheld the right of a special administrator to appeal from an order directing him to pay the arrearage of family allowance which had accrued. The court referred to the general rule and stated: "But this rule has its well-defined limitations. Wherever an order or decree involves a construction of the proper exercise of the duties of the officer, wherever it presents a question as to the right or power of the trustee to comply with it, wherever obedience to it might subject him to liability, the rule does not operate. Even where the order is one merely for the payment of funds, if any of these questions arise under it and personal liability may attach, the right of the officer to appeal is recognized and upheld." In *Cavanaugh* v. *Art Hardware & Mfg. Co.,* 124 Wash. 243 [214 Pac. 152], a receiver gave notice to the creditors of the corporation for the presentation of claims. Some of the claims were allowed by the court as preferred claims. The receiver appealed and a motion to dismiss the appeal was denied on the ground that the receiver appealed as a representative of the general creditors who were aggrieved by the order of the court. A similar decision was made in *Northern Nevada Loan Assn.* v. *Cazier & Sons Co.,* 49 Nev. 115 [239 Pac. 395], wherein the court said: "A receiver may appeal from any order affecting his proper duties or personal rights, or where the estate as a whole is interested." See, also, *In re Heydenfeldt,* 117 Cal. 551 [49 Pac. 713]; *Estate of Hubbell,* 121 Cal. App. 38 [8 Pac. (2d) 530].

As above pointed out, if the trial court had permitted defendant to prove the allegations of the answer and findings had been made in accordance therewith, defendant would have been the custodian of a "trust fund to be shared by all who hold claims against it without priority one over the other". The treasurer of the city alone was made defendant and only part of the bondholders have intervened in the case. For aught that appears a number of the bondholders may not have been informed of the pendency of the proceed-

ing. All of the bondholders have an interest in the bond redemption fund and defendant as custodian of the fund is the representative of all of the bondholders with the duty of seeing that it is legally disbursed. She had the right to appeal from an order which adversely affected the interest of some of the bondholders and which determined her duty with reference to the fund. In *Strasburger* v. *Van Delinder*, 17 Cal. App. (2d) 437 [62 Pac. (2d) 387], although the right to appeal was not discussed, the court entertained an appeal by a county treasurer in a *mandamus* proceeding in which the treasurer was ordered to pay a certain amount due on bonds of a road improvement district, the treasurer claiming, as here, that the funds should be prorated.

The judgment is reversed.

Crail, P. J., and McComb, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 1, 1937.